## Davidson, alias, et al. v. Commonwealth.

(Decided October 17, 1916.)

### Appeal from Fayette Circuit Court.

1.   Criminal Law—Insane Persons—Bar.—A verdict finding a defend-
     ant to be a lunatic upon an inquest which was held after the com-
     mission of the crime and before a trial therefor is not a bar to
     the prosecution of the defendant for the commission of the crime.
2.   Criminal Law—Insane Persons—Inquest—Conclusiveness of Ver-
     dict in.—A verdict upon a lunacy inquest is conclusive of the condi-
     tion of the mind of the party tried at the time of the inquest only,
     but is competent evidence upon a trial of such party for the com-
     mission of a crime either before or after the inquest.
3.   Criminal Law—Insane Persons—Inquest.—It is in the sound dis-
     cretion of the trial court to order or not an inquest of defendant's
     sanity before a trial is had or judgment rendered in a criminal
     action, and only when such discretion is palpably abused will this
     court control the court's action.
4.   Criminal Law—Indictment—Bill of Particulars.—A bill of particu-
     lars will not be granted to force the Commonwealth to disclose to
     the defendant the evidence that will be offered in support of an
     indictment or upon which it was found.

ROBERT E. L. MURPHY for appellant.

M. M. LOGAN, Attorney General; D. O. MYATT, Assistant Attor-
ney General, and JOHN R. ALLEN, Commonwealth's Attorney, for
appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

In March, 1915, appellant was arrested on a warrant
charging that in Fayette county on November 16, 1914,
he attempted to commit a rape upon the body of an in-
fant female under twelve years of age.

On April 8, 1915, the grand jury of Fayette county
returned an indictment against him charging him with
the commission of this offense, and also accusing him of
having been convicted of a similar offense in the Fayette
circuit court at its April term, 1898.

On July 17, 1915, counsel for appellant moved the
court to have appellant tried for lunacy, alleging that he
was insane and incapable of preparing any defense to
the charge. This motion was overruled, but on the 27th
day of September, 1915, upon motion of the acting Com-
monwealth Attorney, the court directed an inquest to
ascertain whether or not appellant was insane, and for

that purpose a jury was impaneled and a trial had which resulted in the following verdict:

"We of the jury find from the evidence that Robert M. Davidson is a person of unsound mind and a lunatic; that the unsoundness of mind has existed for several years; that his place of birth is unknown and he resides in Fayette county, and is thirty-two years of age; that he was not brought into this State for the purpose of becoming a charge upon the Commonwealth; that he owns no estate of any kind; that his father is dead and mother is living and resides at Muir Station, Ky., and has no estate sufficient to support the person under trial; and said Robert M. Davidson is not capable of laboring either in whole or in part for his support."

Appellant was then conveyed to the Eastern Kentucky, Asylum where he was confined for about seven months. It does not appear just how or when appellant was discharged from the asylum. On March 18, 1916, his case was assigned for trial on April 12th, upon which day he was tried and convicted and his punishment fixed at confinement in the penitentiary for not less than ten years nor more than ten years and a day. When the case came on for trial, a motion for a lunacy inquest was entered for appellant and overruled. Counsel for appellant then filed a motion that the Commonwealth be required to furnish him with a bill of particulars. This motion was. also overruled.

In addition to a plea of not guilty, the verdict upon the lunacy inquest of September 27, 1915, was plead as. a bar to a further prosecution of appellant under the indictment, and the plea in bar was overruled by the court. Numerous grounds were assigned in the motion for a new trial, but those which are urged upon us here are: (1) That the court erred in overruling appellant's plea that the verdict upon the lunacy inquest was a bar to a further prosecution of this action; (2) that the court. erred in overruling appellant's motion for a bill of par-. ticulars; (3) that the court erred in overruling appellant's motion for an inquest to determine whether appel-, lant's mind had been restored at the time of the trial; . (4) that the court erred in overruling appellant's motion, for a lunacy inquest at the conclusion of all the evidence; (5) that the court erred in permitting two of the Commonwealth's witnesses, who were deputy sheriffs, to remain in the courtroom during the trial, and to testify,

after a separation of the witnesses had been ordered upon defendant's motion; (6) that the verdict is contrary to the evidence.

As the first, third and fourth grounds relied upon for reversal present but different phases of one question, we will consider them together. The contention that the verdict upon the lunacy inquest is a bar to a further prosecution of this action is based upon the idea that that verdict is conclusive not only of the condition of the mind of the appellant at the time that verdict was rendered, but is also conclusive upon all questions covered by the verdict; and, since the jury by that verdict not only found that the appellant was of unsound mind at that time, but found also that this unsoundness of mind had existed for several years, it was conclusive that appellant was insane at the time the offense was committed, as it was committed in November, 1914, less than a year before the inquest was held in September, 1915.

Under chapter 67 of our statutes providing how a lunacy inquest shall be held, it is provided that the jury shall not only determine the state of the mind of the person in charge, but shall find as well when the insanity began, the cause of it, the property owned by him, whether or not his parents are living and whether he is capable of earning in whole or in part his living. However, such a verdict is conclusive only of the condition of the mind of a party at the time of the inquest and is only *prima facie* evidence of his condition at a subsequent time. Clark v. Trail, 1 Met. 35; Carpenter v. Carpenter, 8 Bush 283; Johnson v. Mitchell, 146 Ky. 382. And even this force is given the verdict only in civil actions. In the case of Montgomery v. Commonwealth, 88 Ky. 509, the effect of such a verdict in a criminal action is thus restricted:

"If it be established that a person was insane at the time he committed a criminal act, it does not follow that the establishing of that fact alone entitles him to an acquittal. Something more must appear, to-wit: That by reason of his insanity he did not know, at the time he committed the act, right from wrong, or, if he did, he had not sufficient will power to control and govern his actions. This mental condition must exist at the time the person committed the criminal act. Insanity must not only exist at the time the act was committed, but it must render the person, at said time, incapable of

knowing right from wrong, or, if he did know it, insanity must render him incapable of controlling his actions. A person may be shown to be insane, but the establishment of that fact does not carry with it the presumption that he was not criminally responsible. His insanity may relieve him from contract obligations, but he will be criminally liable unless he goes further, and shows that it was so violent as to render him incapable of knowing right from wrong, or, if knowing, incapable of controlling his actions. Therefore, conceding, for the sake of argument, the appellant's proposition to be true in the abstract, it does not follow that it is correct as applied to a criminal case. But we are not prepared to say that said proposition is correct in any case, unless the insanity is established by an inquisition; in which case the presumption would exist and control in civil matters, but would not control in criminal matters for the reasons above indicated. Evidence of insanity, both before and after the criminal act, may be given to the jury for the purpose of enabling them to determine whether or not the same condition of mind existed at the time the act was committed; but no legal presumption arises from the proof of previous or after insanity, that the person was insane at the time he committed the criminal act; but the jury may draw such inferences of fact from these conditions as they may deem proper." To the same effect are Roberson's Criminal Law, Vol. 1, Sec. 31; 12 Cyc. 161; Shannahan v. Commonwealth, 8 Bush 463; Graham v. Commonwealth, 16 B. Monroe 587; Farris v. Commonwealth, 1 S. W. 729; Murphy v. Commonwealth, 92 Ky. 485; 1 Wharton's Criminal Law, Sec. 33; Bishop's Criminal Law, Sec. 383b; Clark's Criminal Law, Sec. 52. This position is also clearly recognized by Section 156 of the Criminal Code, which is as follows:

"If the court shall be of opinion that there are reasonable grounds to believe that the defendant is insane, all proceedings in the trial shall be postponed until a jury be impaneled to inquire whether the defendant is of unsound mind, and if the jury find that he is of unsound mind, the court shall direct that he be kept in prison or conveyed by the sheriff to the nearest lunatic asylum, and there kept in custody by the officers thereof until he be restored, when he shall be returned to the sheriff on demand, to be reconveyed by him to the jail of the county."

The inquest in this case was held pursuant to this section of the Criminal Code, which provides that all proceedings in the trial shall be postponed until the condition of defendant's mind can be determined, and if unsound that he shall be confined in prison or the nearest lunatic asylum until he is restored, when he shall be returned to the jail of the county. He is, of course, then to be tried upon the charge, because only for that reason could he be returned to jail if restored to a sound mind. The provisions of Section 2158, a part of Chapter 67, of the Kentucky Statutes, that the jury upon request shall find when the party lost his mind and the cause thereof, his ability to work and what property he owns, etc., is for the purpose of determining whether he is an idiot or a lunatic and whether a public charge or not, as well as to furnish to the asylum authorities information needed by them in his treatment, as is clearly shown by many provisions of the chapter, and the only judgment that can be entered upon such a verdict is that the person tried is then a lunatic or an idiot and shall be confined or released.

As such a verdict is conclusive of the condition of the mind only at the time of the inquest, and as there is no rule of law or statute which requires an inquest to rebut the presumption that a person once found to be of unsound mind continues so, it may be rebutted by oral evidence upon a trial for a criminal offense, in which the defendant's sanity is an issue to be determined by the jury. Fain v. Commonwealth, 78 Ky. 188; Brown v. Commonwealth, 14 Bush 402; 1 Bishop's Criminal Law, Sec. 383. Therefore, appellant was not entitled to an inquest to show that his mind was restored before a trial could be had or judgment rendered against him. Whether or not a trial upon a criminal charge shall be suspended and a lunacy inquest ordered is a matter that addresses itself to the sound discretion of the trial court, and only when that discretion has been abused will it be controlled by this court. The question of whether or not defendant was insane at the time of trial was submitted to the trial jury, which found he was not then insane, and it cannot be said the court abused a sound discretion in overruling the motion for an inquest.

Upon trial under the indictment appellant was permitted to introduce a certified copy of the record and verdict of the inquest upon the question of his sanity, and

to introduce numerous witnesses upon the same question. The jury was properly instructed that if, at the time the offense was committed, or at the time of the trial, they believed from the evidence the appellant was insane, they should acquit him. This was all he was entitled to, and the court did not err in disallowing his plea in bar or in overruling any of his motions for a lunacy inquest.

2. There is nothing in this record to entitle appellant to a bill of particulars. The indictment is simple, charges the offense in the terms of the statute denouncing the crime, the manner of its commission and the person against whom committed. A bill of particulars could have gone no farther. Appellant bases his contention for a bill of particulars upon the fact that the Commonwealth's witnesses would not discuss with him what their testimony upon the trial would be, and his claim that appellant was insane, his idea evidently being that he was entitled to this information and that he could obtain same from a bill of particulars, but he is neither entitled to have the attorney for the Commonwealth furnish him this information, nor is it the office of a bill of particulars to furnish such information. Franklin v. Commonwealth, 105 Ky. 237; Bishop's New Criminal Practice, Sec. 643; Commonwealth v. Jordan, 207 Mass. 209.

3. Appellant also complains that the court permitted two witnesses for the Commonwealth, Ben Freckman and Harrison Scott, to remain in the courtroom during the trial and to testify for the Commonwealth over his objections after the witnesses had been excluded from the room upon motion of appellant. These two witnesses were deputy sheriffs of Fayette county, and so far as this record discloses may have been in the courtroom in the discharge of their official duties in connection with the court. Whether that is true or not, it was within the discretion of the court to exempt them from the operation of the rule, and there is nothing in the record showing that the court abused this discretion. Perkins v. Commonwealth, 124 S. W. 794.

4. It is further contended by appellant that the verdict is against the evidence, but this contention is clearly untenable. Florine Sampson, the person against whom the crime was committed, and her mother, Ida Ellis, both fully established the guilt of appellant, and Harrison Scott testified to a statement made by appellant in which

he admitted that he made the attempt, but endeavored to excuse himself by stating that the girl was willing.

Upon the question of appellant's insanity at the time of and after the commission of the act a number of witnesses were introduced who testified that, in their judgment, he was then insane. Evidence of insanity of several of defendant's relatives was introduced, and two physicians testified that, from examinations made of him while he was in jail before the trial for lunacy in September, 1915, in their judgment, he was at that time insane, and from recent examinations he was still insane at the time of the trial, and one of these physicians stated, in his judgment, appellant had been at least partially irresponsible for a number of years; but, upon the other hand, it was testified, by the assistant physician at the asylum where appellant was confined, that from his observations of the appellant, he was not at any time insane. There was also evidence of other witnesses that up until the commission of this offense the appellant worked at his trade as a carpenter and showed no indications of criminal irresponsibility; that when he was caught in the attempt by the mother of the girl upon whom the attempt was made, he fled and successfully evaded capture by the officers who had a warrant for him for some months.

While the preponderance of the testimony in numerical strength is to the effect that appellant was at times insane and irresponsible, there was ample evidence before the jury to sustain its verdict that the appellant at the time of the commission of the act and at the time of the trial was not criminally irresponsible.

Wherefore the judgment is affirmed.