## Miller v. Commonwealth.

(Decided October 12, 1923.)

Appeal from Breckinridge Circuit Court.

1. Criminal Law—Affidavit for Continuance for Absent Witness Held
   Not to Show Diligence.—An affidavit that absent witnesses resided
   in another county and that a subpoena had issued for them "on
   the — day of May, 1923," and placed in the hands of the sheriff
   of the county of their residence, who had not returned it, did not
   show diligence, where the trial was had on the 31st day of May,
   since the subpoena could have been procured on the very day of
   trial.
2. Criminal Law—Refusal of Continuance for Absence of Witnesses
   Discretionary and Not Ground for Reversal, if Absent Testimony
   was Only Cumulative, and Defendant got Benefit of it.—Criminal
   Code of Practice, section 189, vests in the trial court a sound dis-
   cretion at a term subsequent to return of indictment as to con-
   tinuance for absence of defendant's witnesses, or whether a trial
   will be ordered if the prosecuting attorney agrees to admit the
   affidavit to be read as the testimony of such witnesses, and a
   judgment of conviction will not be reversed for refusing a con-
   tinuance, where from all circumstances it is manifest that de-
   fendant's substantial rights were not prejudiced, as where testi-
   mony was only cumulative and the jury got the benefit of it.
3. Criminal Law—Statute Vesting Discretion as to Continuances Ap-
   plies to Murder Cases.—Criminal Code of Practice, section 189,
   vesting in the trial court a sound discretion at a term subsequent
   to return of indictment as to whether prosecution should be con-
   tinued because of the absence of witnesses, applies to murder
   cases, wherein the death penalty is inflicted.
4. Criminal Law—Refusal of Continuance for Absent Witnesses Held
   Not Error.—In a homicide case, wherein death penalty was in-

flicted, refusal of continuance at a term subsequent to the one
at which indictment was returned by reason of the absence of a
physician who would testify that defendant was insane, and a
witness who would testify to an alibi, held not an abuse of dis-
cretion, in view of testimony of other physicians and other testi-
mony overwhelmingly proving that defendant committed the
homicide, in view of Criminal Code of Practice, section 189.

5.   Homicide—Verdict of Guilty Notwithstanding Plea of Insanity
Sustained.—In a prosecution for murder, wherein the death
penalty was inflicted, verdict of guilty notwithstanding claim of in-
sanity held not flagrantly against the evidence.

CLAUDE MERCER for appellant.

THOS. B. McGREGOR, Attorney General, and LILBURN PHELPS,
Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, Charles Miller, a colored man about
twenty-four years of age, was indicted for and convicted
in the Breckinridge circuit court of murdering Sam May-
craft and was given the death penalty. On his appeal
to this court, the judgment was reversed by an opinion
reported in 197 Ky. 703, and in which the facts relating
to the Commission of the homicide are stated and will
not be repeated here. That opinion was rendered on
February 13, 1923, and a second trial was had in the
Breckinridge circuit court on May 31, thereafter, result-
ing in a similar verdict, upon which judgment was ren-
dered and which defendant seeks to reverse by this ap-
peal.

Only two errors are argued and relied on for that pur-
pose by his able counsel, which are (1), the court erred
in overruling defendant's motion for a continuance be-
cause of the absence of Dr. Milton H. Board and Aubrey
Mopley, material witnesses in his behalf, and whose tes-
timony, if present, was set out in the affidavit which the
Commonwealth agreed might be read as the depositions
of the absent witnesses, and (2), that the verdict of the
jury is flagrantly against the evidence on defendant's
chief defense of insanity at the time the homicide was
committed.

1.   It was stated in the affidavits that the two wit-
nesses resided in Louisville, Jefferson county, Kentucky,
and that a subpoena had issued for them "on the — day
of May, 1923," and placed in the hands of the sheriff of
that county, but he had not returned them. It is doubt-

ful if sufficient diligence was shown by that statement, since the subpoena could have been procured on the very day of trial and the statement in the affidavit be literally true, which if correct would be no diligence at all. Brown v. Comth., 195 Ky. 166, and Mohundro v. Comth., 197 Ky. 221. But because of the gravity of the punishment we have concluded to treat the affidavit as sufficient and as completely measuring up to the requirements of the practice.

With reference to the witness Dr. Board, it was stated that "on the — day of —— 1923," and while defendant was imprisoned at the penitentiary at Eddyville, Kentucky, to which place he was sent after his first trial, witness examined defendant and pronounced him insane and that he had been so for more than five years, and that he did not have sufficient reason to know what he was doing or to know right from wrong because of his mental unsoundness. With reference to the witness Mopley, it was stated in the affidavit that he would swear that defendant was in Louisville on October 4, 1922 (the evening on which the homicide was committed), and remained in that city until something like ten o'clock the next morning, October 5, which, if true, rendered it impossible for him to have committed the crime with which he is charged.

The trial was had at a term subsequent to the one at which the indictment was returned, and section 189 of the Criminal Code vests in the trial court a sound discretion in such cases as to whether the prosecution should be continued because of the absence of defendant's witness or witnesses, or whether a trial will be ordered if the prosecuting attorney agrees to admit the affidavit to be read as the testimony of the absent witness or witnesses. Under the latitude conferred by that section we have uniformly held that under the broad discretion therein given the trial court, a judgment of conviction will not be reversed for refusing a continuance, unless from all the facts and circumstances of the case it manifestly appeared that defendant's substantial rights were prejudiced thereby (Brown v. Commonwealth, *supra*), an example of which might be, where the testimony of the absent witness was directed to a most vitally material issue in the case and was the only testimony thereon. But where there was other testimony heard at the trial on that issue and the absent testimony was only cumulative,

and the jury got the benefit of it, as set out in defendant's affidavit, we have quite uniformly held that the court did not abuse its discretion and that the verdict of conviction would not be disturbed. Some of the numerous cases so holding are: Ross v. Comth., 25 Ky. L. R. 1621; May v. Comth., 153 Ky. 141; Caudill v. Comth., 155 Ky. 578; Tyree v. Comth., 160 Ky. 706; Adkins v. Comth., 161 Ky. 254; Comth. v. Flynn, idem 289, and Wallace v. Comth., 187 Ky. 775. Lay v. Comth., 186 Ky. 163, is a case wherein it was held that the court abused its discretion in refusing a continuance because the testimony of the absent witness was not cumulative but was the only evidence upon that issue, except that given by the defendant, and the absent witness had not only been subpoenaed but was present at the time the trial was entered into and disappeared before the time for his introduction. The section of the Code referred to applies to murder cases wherein the death penalty is inflicted, as well as to other criminal prosecutions, and we can detect no grounds for making an exception of this case and excluding it from the control of the approved practice in other similar ones. There appears no fact or circumstance, save perhaps the gravity of the punishment, that would authorize us in doing so. Other witnesses, including the two learned physicians who under the proof had the opportunity to and did make a more thorough examination than did Dr. Board, testified on defendant's behalf on his defense of insanity, as did also his father and another witness or two. Besides, it appears in the evidence for the Commonwealth that the examination of the defendant, referred to in the affidavit as made by the absent witness (Board), consisted in a short conversation between the two while the defendant was locked up in his cell with the witness on the outside conversing with him, and in which the latter made no physical examination or other diagnosis to determine defendant's mental condition. But, however that may be, we feel that we would be compelled to retrace our steps as made in the numerous cases referred to were we to hold in this case that the court abused its discretion in declining to grant the continuance on account of the absense of the witness, Board, and by parity of reasoning the same is true as to the other absent witness, with the additional fact, as to his testimony, that it was overwhelmingly proven that the defendant committed the homicide which, indeed, is not denied by his counsel.

2. It was shown by witnesses for the defendant that he was incarcerated in March, 1921, in some kind of an asylum for the insane in the state of Alabama. He remained there for about thirty days, the most of which time he was given the privilege of a trusty and worked in the dairy department of the institution. While so engaged and as stated at the expiration of about thirty days he escaped and so far as the record shows no effort was ever made to apprehend him. He afterwards returned to the home of his father, who was a farmer, and engaged for a while in assisting the latter on his farm, when he again disappeared and was not heard from till the commission of the crime for which he is charged.

The asylum physicians said that he was classified by them as "a dementia praecox, paranoid type," but that he "escaped before a positive diagnosis was agreed upon by the staff with the man present." They also said that the classified affliction produced with the patient "prominence of delusions, particularly ideas of persecution or grandeur, often connectedly elaborated, and halluncinations in various fields with progressive deterioration." One of the physicians stated that assuming defendant to be in the same mental condition on October 4, 1922 (the date of the homicide), as he was when confined in the institution, he would still have sufficient reason to know what he was doing and to know right from wrong; but the other one answered, in response to the same hypothetical question, "*If* this man had delusions of persecution he would not be responsible for his actions." The father testified that the defendant, in his opinion, was not mentally sound, but one of his colored neighbors in Alabama, who was introduced by the Commonwealth, testified to the contrary. In addition the Commonwealth introduced Doctors Sights, Traviss, and Kinchloe, all of whom saw and conversed with defendant after he committed the crime and they testified in substance that according to their opinion he was of sound mind and responsible for his acts.

The Commonwealth also introduced a great number of lay witnesses who saw and conversed with defendant, some on the day before he committed the crime at night, and others afterwards on up to the day of the trial, and from those conversations and the conduct of defendant as observed by them they stated that, in their opinions, he possessed a normal mind. Added to all that testi-

mony is the proven conduct of defendant both before and after the commission of the crime, which does not vary from, but accords with, the acts and doings of a rational individual similarly engaged and circumstanced.

The court, in its instructions, submitted to the jury the issue of insanity and with such accuracy as to elicit from counsel the statement that "after careful study, we are unable to point out any defects in the instructions, as given by the court." Under the instructions the jury found that issue against defendant, and with the evidence upon it, as above briefly outlined, there exists no ground under numerous decisions of this court, other than sympathy, to interfere with the verdict. Because of the death penalty, we have given to the record close study in order to convince ourselves that the defendant had a fair and impartial trial according to the prescribed rules of criminal practice and are unable to find any error committed by the court, either substantial or otherwise.

The homicide was a most atrocious one and that the defendant committed it is so overwhelmingly proven that his counsel admitted it, and relied solely on the plea of insanity, which, according to his statement to the jury, was not for the purpose of securing an acquittal, "But, under the instructions the court will give you, send him to the penitentiary for life," thus reducing the issue solely to the defendant's mental responsibility at the time he committed the deed. The jury, from evidence abundantly authorizing it, rejected his only plea, and any commiseration which we might entertain, because of his unfortunate situation, furnishes no legal grounds for our interference.

Our conclusion, therefore, is that no reasons are shown for a reversal of the judgment, and it is accordingly affirmed.

Whole court sitting.