## Sharp v. Commonwealth.

December 14, 1948.

J. Howard Holbert and Davis Williams for appellant.

A. E. Funk, Attorney General, and Walter C. Herdman, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Affirming.

The appeal is from a judgment convicting appellant, and sentencing him to be confined in the state reformatory for a period of two years, on an indictment charging him with maliciously shooting and wounding Jess Rigger with intent to kill.

On the night of the 24th day of December, 1946, appellant attended a dance at a road house in Hardin County. The festivities ended about midnight, and the patrons were leaving, or preparing to leave, the dance hall. Jess Rigger was standing or walking at a place approximately 10 feet from the front door of the hall, and was facing the highway when he was struck in the rear of the head by a bottle. Immediately thereafter someone shot him in the back. He did not see his assailant, and although he knew appellant, he had never had any "dealings" with him or any trouble with him of any character. All witnesses testified that the victim of the assault peaceably was taking his departure and had had no trouble with anyone. Several witnesses testified that, immediately after the shooting occurred, appellant ran up the road and "put what looked like a gun in his pocket." The operator of the road house and one of the musicians who played at the dance testified that they saw Sharp throw the bottle which hit Rigger on the head, and that appellant then "pulled a gun and shot him (Rigger) in the back." They testified that immediately after shooting the victim appellant ran up the road. Another witness testified he saw appellant with a gun in his hand earlier in the evening. Appellant testified that he did not have a gun in his possession on that evening and introduced witnesses who corroborated his testimony to this effect. Other witnesses placed appellant in a position and place from which it would have been impossible for him to have thrown the bottle or fired the shot which wounded Rigger. There is an entire

absence of proof to establish motive, or any other reason, prompting appellant to fire the shot.

About 10½ months previous, to wit: February 7, 1946, at an inquest held in the Larue Circuit Court, appellant was adjudged to be a person of unsound mind. This judgment was never modified, reversed, or set aside; and pursuant thereto, appellant was confined in the United States Veterans Facility at Lexington, Kentucky, for a period of 6 months. He then was permitted to return to his home for a trial visit, and was on such a furlough at the time it is alleged that he shot Mr. Rigger. Previous to the inquest held in the Larue Circuit Court, appellant served in the United States Navy where he was hospitalized for a mental and nervous disorder.

As grounds for reversal appellant contends that (1) the Court erred in overruling his motion for a peremptory instruction of not guilty, on the ground that at the time of the alleged shooting he was a person of unsound mind; (2) the Court erred in admitting incompetent testimony, and; (3) the Court erred in overruling appellant's motion for a continuance of the trial of the case on account of the absence of Paul Priddy, an eyewitness to the shooting.

On the question of insanity appellant introduced the record of the inquest held on February 7, 1946, and read the deposition of Doctor Louis M. Foltz, a psychiatrist, in Louisville which was taken on the 20th day of November, 1947, approximately two weeks before the trial of the case. Doctor Foltz testified that he examined appellant on September 30, 1947, and that from the history of the case and his examination at that time he concluded appellant was "mentally sick and insane." He further stated that he felt definitely the patient would have future trouble; that he was suffering from a mental illness which statistics indicated would last for a period of years; and that "he certainly would be having difficulty now (November 30, 1947)." He was asked a hypothetical question (which related in sequence the events commencing with the inquest in the Larue Circuit Court and ending with the shooting for which he was on trial) as to whether appellant, because of unsoundness of mind, was able to judge right from wrong. The first answer he gave to this question was that in his

opinion appellant would not be able to judge right from wrong, but later he modified this opinion when he was asked the following question and made the following answer: "Q. State whether or not Doctor in your opinion at that time he had sufficient reason to know right from wrong? A. Well, he might know right from wrong, but because of unsoundness of mind would not be able to utilize judgment or reasoning." The Commonwealth introduced four physicians all of whom testified that they had examined the appellant on the day of the trial; that they were of the opinion he was a person of sound mind; and that their examination disclosed nothing to indicate appellant was of unsound mind on the night of the shooting.

Usually, the question of insanity at the time of the commission of a crime is a matter to be determined by the jury from the evidence, under proper instructions by the Court. But appellant contends that testimony to the effect that appellant was sane approximately a year after the commission of the offense did not overcome the "prima facie evidence" of his insanity which he contends was established by proof of adjudication of insanity previous to the commission of the offense. The rule in respect to insanity in defense of a criminal act is different from that applied in avoidance of a contractual obligation in a civil action. In criminal actions the mere fact that defendant has some form of insanity does not relieve him from the consequences of his act; he must be so bereft of mind as to render him incapable of knowing right from wrong or, if knowing, incapable of controlling his actions. Proof of insanity of the defendant either previous to or after the commission of the crime is competent evidence to be submitted to the jury to enable them to determine whether or not the same condition of mind existed at the time the crime was committed. Montgomery v. Commonwealth, 88 Ky. 509, 11 S. W. 475; Davidson v. Commonwealth, 171 Ky. 488, 188 S. W. 631; and Southers v. Commonwealth, 209 Ky. 70, 272 S. W. 26. The rule in civil cases is more lenient, and is: that where a person has been adjudged to be insane in a Court of competent jurisdiction, the verdict, though not conclusive, is prima facie evidence of the patient's condition at a subsequent time. Johnson's Committee v. Mitchell, 146 Ky. 382, 142 S. W. 675; Montgomery

v. Commonwealth, supra. It is obvious from what we have said that the question of appellant's insanity at the time of the commission of the act did not resolve itself into one of law, but was a question of fact to be determined by the jury. It follows that the Court did not err in overruling appellant's motion for a peremptory instruction.

The testimony complained of is that the doctors introduced by the Commonwealth testified that the appellant, in relating the history of his case told them he was in the habit of consuming large quantities of intoxicating liquors. We think this testimony to have been competent as would the revelation of any other fact disclosed to the doctors by the patient, and which they considered and it was proper for them to consider in arriving at a conclusion in respect to the mental capacity of the patient. But if it had not been competent, appellant cannot complain, because he first introduced the subject in the deposition of Doctor Foltz. Counsel for appellant asked Doctor Foltz the following question and received the following answer: "Q. Assuming Doctor that Owen Sharp had been drinking on this occasion would that affect the answers you have given? A. No."

There remains for our determination the propriety of the Court in overruling the motion for continuance. In support of the motion, appellant filed his affidavit reciting the facts to which the absent witness would testify if present at the trial. The facts so recited are essentially the same as those to which Louis Burks testified in person on the trial. The Court permitted the affidavit to be read to the jury and, since the evidence contained therein was merely cumulative, the failure of the Court to continue the case to permit the defendant to obtain the personal appearance of the witness was not prejudicial error. 189, Criminal Code of Practice; Miller v. Commonwealth, 200 Ky. 435, 255 S. W. 96. The record discloses no error prejudicial to appellant's substantial rights.

The judgment is affirmed.