**COMMONWEALTH of Kentucky, Appellant,**

**v.**

**Neil F. STRICKLAND, Appellee.**

Court of Appeals of Kentucky.

Feb. 14, 1964.

702

John B. Breckinridge, Atty. Gen., Martin Glazer, Asst. Atty. Gen., for appellant.

Frank E. Haddad, Jr., Daniel T. Taylor, III, Louisville, for appellee.

PALMORE, Judge.

On December 24, 1959, while awaiting trial in the criminal division of the Jefferson Circuit Court on an indictment charging him with the felony of carrying concealed a deadly weapon (KRS 435.230), the appellee, Strickland, was committed to Central State Hospital at Lakeland for a 35-day observation. KRS 202.120. Thereafter, on February 11, 1960, pursuant to a civil inquest in the Jefferson Circuit Court under KRS 202.005 et seq. he was adjudged to be of unsound mind. In April of 1960 the medical authorities at the hospital, in whose custody Strickland had remained since December 24, 1959, came to the conclusion that their original diagnosis of "mental illness"[1] had been erroneous and that the patient's condition was "the result of a personality disorder" which they variously characterized as a sociopathic or anti-social personality and which, in common parlance, is often called a psychopathic personality. They so notified the judge of the criminal division before whom the indictment was pending and advised the Commonwealth's Attorney that Strickland was able to stand trial.

On May 17, 1960, Strickland appeared with his counsel, withdrew his former· plea of not guilty, and pleaded guilty to the indictment. He was sentenced to 5 years in the penitentiary and placed on probation. In December of 1960 his probation was revoked and he was remanded to prison. After a time he was released on parole but eventually was recommitted to the penitentiary following revocation of the parole.

Conceiving that his guilty plea and the judgment of conviction entered on May 17, 1960, were void because there had never

1. Cf. KRS 202.010(1), defining a "mentally ill person" as one who has "a psychiatric or other disease which substantially impairs his mental health."

been a restoration inquest subsequent to the adjudication of insanity on February 11, 1960, Strickland brought this RCr 11.42 proceeding in the Jefferson Circuit Court to vacate the judgment of conviction. On the basis of pleadings stating the facts outlined above the trial court concluded that its action in proceeding with the case, without first having Strickland's then existing mental capacity established by a jury in a restoration inquest, had been unauthorized. The controversy comes to us on the Commonwealth's appeal from an order vacating the judgment of conviction.

At the time the judgment of conviction was entered § 156 of the Code of Criminal Practice was still in force.[2] It provided as follows:

"If the court shall be of opinion that there are reasonable grounds to believe that the defendant is insane, all proceedings in the trial shall be postponed until a jury be impaneled to inquire whether the defendant is of unsound mind, and if the jury find that he is of unsound mind, the court shall direct that he be kept in prison or conveyed by the sheriff to the nearest lunatic asylum, and there kept in custody by the officers thereof until he be restored, when he shall be returned to the sheriff on demand, to be reconveyed by him to the jail of the county."

■ The words "until he be restored" in Cr.Code § 156 were never construed as requiring a restoration inquest, and there have been several instances in which this court has upheld the conviction of a person previously adjudged insane and never formally restored. See, for example, Davidson v. Commonwealth, 171 Ky. 488, 188 S.W. 631 (1916); Southers v. Commonwealth, 209

Ky. 70, 272 S.W. 26 (1925); Cannon v. Commonwealth, 243 Ky. 302, 47 S.W.2d 1075 (1932); Gulley v. Commonwealth, 284 Ky. 98, 143 S.W.2d 1059 (1940); Murrell v. Commonwealth, 291 Ky. 65, 163 S.W.2d 1 (1942); and Sharp v. Commonwealth, 308 Ky. 765, 215 S.W.2d 983 (1943).[3]

■ The terms "insane," "unsound mind," and "mental illness" are too loose to serve as a reasonable test of whether a person is properly fit to plead or defend himself in a criminal proceeding. For this purpose, whatever may be the technical classification of his mental state, legally or medically, the test is whether he has substantial capacity to comprehend the nature and consequences of the proceeding pending against him and to participate rationally in his defense. Cf. 14 Am.Jur. 802 (Criminal Law, § 45). It is not necessary that this determination be made by a jury.

Counsel for Strickland do not now contend that the adjudication of insanity was conclusive or that the trial court had no power to proceed with his case and accept a guilty plea without a restoration inquest. What their argument apparently amounts to is that having done so, a judge can change his mind at any time in the future and start over again by way of RCr 11.42. The inevitable chaos such a procedure would unloose cannot be permitted.

■ If the issue of a defendant's mental capacity to plead or to defend himself has not been submitted to and determined by the court on the basis of a fair hearing it should not be res judicata.[4] Therefore, in the absence of such a hearing, upon a showing in a subsequent RCr 11.42 proceeding that at the time he entered his plea or was tried he did not have sufficient mental

2. It has been superseded by RCr 8.06, effective January 1, 1963.

3. In each of these particular cases the defendant was tried on a plea of not guilty, though only in Davidson v. Commonwealth was an issue raised as to whether he or she was mentally competent at the

time of trial as distinguished from the time the crime was committed.

4. Certainly we are satisfied that this is the law in the light of recent pronouncements by the U. S. Supreme Court, which cannot be ignored.

competence to defend himself it would be incumbent on the court to set the conviction aside. But in this case there has been no showing to that effect.

■ In the recent case of Thomas v. Morrow, Ky., 361 S.W.2d 105 (1962), a habeas corpus proceeding, the facts were held to be conclusive of the defendant's incompetence to participate in the criminal proceedings leading to his conviction and imprisonment. We cannot say so in this case. It is our judgment that the trial court must conduct a hearing and make a finding of fact on the question of Strickland's mental capacity as of the time his guilty plea was entered.

As mentioned in Davidson v. Commonwealth, 171 Ky. 488, 188 S.W. 631 (1916), the rebuttable presumption existing in civil cases by reason of an insanity adjudication does not necessarily apply in criminal proceedings. From the standpoint of procedural effect—that is, whether a permissible inference, a rebuttable presumption, or a conclusive presumption (as in Thomas v. Morrow) has been established— the particular circumstances of the case should govern. In Thomas v. Morrow the prisoner, while awaiting trial in circuit court, contemporaneously was found incapable of standing trial in federal court. In the instant case the trial court in its discretion determined that Strickland was able to stand trial. In view of this action, based on whatever information was brought to the attention of the court at the time, it would be unreasonable now to draw an inference of continued incapacity as of that time without further evidence reasonably justifying such a conclusion. In short, upon remand of this proceeding to the trial court for purposes of a hearing and determination of the question of Strickland's mental capacity at the time his guilty plea was entered, the fact of his insanity adjudication on February 11, 1960, will not constitute evidence sufficient to support vacation of the conviction.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

MONTGOMERY, J., dissenting.

MONTGOMERY, Judge (dissenting).

So far as the majority opinion indicates the need for a further hearing to determine the mental capacity to stand trial, I respectfully disagree. I am thoroughly in accord with the principles of habeas corpus as set forth in Owen v. Commonwealth, Ky., 280 S.W.2d 524, and feel that habeas corpus affords an adequate remedy which renders RCr 11.42 unnecessary.

In the present case, Strickland appeared with counsel, withdrew his plea of not guilty, and pleaded guilty. This was done after the medical authorities having him in custody had determined that he was able to stand trial and the court had been so advised. The effect of the majority opinion is to go back now for a determination of whether Strickland was in fact mentally able to stand trial.

This case is similar to Higbee v. Thomas, Ky., 376 S.W.2d 305, also 375 U.S. 13, 84 S.Ct. 79, 11 L.Ed.2d 41, wherein the question of adequacy of counsel was involved.

I am concerned with whether the majority opinion here and in the Higbee case will require the trial court in every instance to have a hearing to determine the mental capacity of the accused to stand trial and another hearing to determine the adequacy of counsel. This would be a serious problem when trial dockets are congested and would become a more aggravating problem when there is no apparent restraint or limitation on the number of times such matters may be raised under RCr 11.42. The lack of finality in criminal cases is destroyed by the apparent ability of an accused to have his case tried and heard on appeal at least twice. No other type of litigation has such favorable treatment. I am at a loss to understand what has become of two ancient and two

well-founded principles of law, res adjudicata and the law of the case rule, in so far as applicable in criminal cases.

Maybe this dissent should be dismissed as an expression of old-fashioned thinking, but the light regard in which such ancient principles seem to be held is disturbing. The procedures apparently recognized in this case and in Higbee indicate an utter lack of understanding of the practicalities of the administration of justice in the field of criminal law.

My concern compels me to dissent.