**Ben W. McELWAIN, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 4, 1966.

Laurence T. Gordon, Madisonville, for appellant.

Robert Matthews, Atty. Gen., Robert D. Preston, Asst. Atty. Gen., for appellee.

MOREMEN, Chief Justice.

Appellant, Ben W. McElwain, was indicted in the Hopkins Circuit Court for the armed robbery of a service station in Madisonville, Kentucky, on October 11, 1962. In December 1962, he was transferred to the Western State Hospital at Hopkinsville for a mental examination. Before the usual 35 day period of commitment had terminated, a request was made by the hospital that the time for observation and treatment be extended for an additional period of 35 days. This was granted. On February 19, 1963, the doctors at the hospital signed a certificate to the effect that in their opinion appellant was not mentally ill. This certificate, signed and sworn to by Drs. U. Appen and W. J. Kernohan, reads:

"Ben Wayne McElwain was admitted to Western State Hospital on December 27, 1962, under an order of Hopkins Circuit Court for a 35 day period of medical examination, observation and treatment. Affiants, staff physicians of and acting for the hospital, having examined the patient while hospitalized, certify that in their opin-

ion the defendant is not a mentally ill or mentally defective person, and request his discharge from the hospital."

Immediately following the arrest of appellant, the court appointed a competent defense counsel who conferred with appellant many times, both in the jail and at the hospital. His case came on to be tried on May 13, 1963, and, although we do not have before us the transcript of that trial, we do have a copy of the instructions given. The first instruction was a general one on armed robbery. The second instruction read as follows:

"The jury should consider the facts introduced in this case as to the defendant being drunk at the time that the offense stated in the indictment is alleged to have occurred for the purpose of determining his mental condition at said time and the motive which actuated him in the commission of the offense, if any was then committed by him, and if the jury believe from the evidence that at said time, by reason of drunkenness, defendant's mental condition was such that he did not have the intention to take, steal or carry away from the person and in the presence of said Lawrence Buchanan, by putting the said Lawrence Buchanan in fear of bodily harm by the use or display of a pistol, a deadly weapon, said money and convert it to his own use and to permanently deprive the owners of their property therein, the Jury should find the defendant not guilty."

Appellant was convicted and sentenced to life imprisonment.

In July 1965, appellant filed a motion under RCr 11.42 to have the judgment against him vacated on the ground that he was insane at the time of his trial and judgment. The court again appointed competent counsel to represent him in the proceeding; a hearing was held on the motion, evidence heard and transcribed, and at the close of the hearing the court overruled the motion to vacate the judgment. From that order this appeal has been taken.

■ Appellant contends that at the time of his trial he did not have the capacity to comprehend the nature and consequences of the proceeding against him and to participate rationally in his defense, and reliance is had upon Commonwealth v. Strickland, Ky., 375 S.W.2d 701, in support of this contention.

After Strickland had been accused of a public offense and was awaiting trial he was committed to Central State Hospital on December 24, 1959, for a 35 day observation period. Thereafter, on February 11, 1960, he was adjudicated to be of unsound mind. In April of 1960, the medical authorities at the hospital where Strickland had remained since December 24, 1959, came to the conclusion that their original diagnosis of mental illness had been erroneous so they advised the circuit court that Strickland was able to stand trial. In May, Strickland withdrew his former plea of not guilty, pled guilty to the indictment and was sentenced to five years in the penitentiary. Later in a proceeding under RCr 11.42, the circuit court vacated the judgment on the ground that there should have been a formal inquest and restoration before he was tried and permitted to plead guilty. On the appeal in the RCr 11.42 proceeding it was held, in the absence of a hearing on Strickland's mental capacity to plead after he had been adjudged of unsound mind, that he would be entitled, upon a post-conviction proceeding, to relief under RCr 11.42 upon a showing that at the time he entered his plea or was tried, he did not have sufficient mental competency to defend himself. The case was remanded for the purpose of hearing and determining the question of Strickland's mental capacity at the time his guilty plea was entered.

The facts are quite different in the case under consideration because the court conducted a full hearing to determine the question of McElwain's mental condition at the time of the first trial and on the

motion to vacate the judgment. In the latter proceeding McElwain testified that he had experienced emotional disturbances while serving in the armed forces in Korea in 1960, and that he had received a general discharge from the army with a thirty per cent disability because of his nervous condition. He said he had very little memory of the conduct of his trial and that he did not recall how he had planned his defense with the attorney who represented him at the trial. His mother testified as to the strange behavior of her son and related incidents of his going outside in the cold without his shoes on and of his becoming violent and having to be taken to the hospital at Ft. Knox. In most instances she was corroborated by her son, Jerry McElwain, who also testified. A letter was filed from an officer at the Valley Forge General Hospital at Phoenixville, Pennsylvania, in which it was related that appellant was in good physical health, but had severe emotional disturbances. The psychiatric report dated November 14, 1963, of a Dr. J. Wysocki of the Western State Hospital, was filed, which concluded as follows:

"Diagnostic impression: Schizophrenic reaction, schizoaffective type.

"Therapeutic Formulation: The definite need for psychotherapeutic assistance is to be emphasized; and a need for adjunctive therapies, such as vocational, occupational, or recreational therapies, and desirability of intermittent psychiatric consultation should provide the most effective treatment at this state of the individual's psychotic reaction."

The clerk of the Hopkins Circuit Court who testified in behalf of the Commonwealth read into the record various certificates which are described above, including the certificate of the doctors, which contains the opinion that the defendant was not mentally ill or defective, and a copy of the order of the court which released him from the hospital upon that certification.

A deputy sheriff testified that Dr. Appen, a psychiatrist from Western State Hospital had testified at the trial, but we have no transcript of what happened at the first trial.

The county attorney of Hopkins County at the time of the trial of McElwain on the charge of robbery, testified as follows:

"Q. I will ask you as an attorney for the Commonwealth whether or not there was at any time ever any suggestion by either the defendant or anybody in his behalf or his attorney that he was not capable or able to assist his counsel in the trial of the case? A. Not to my knowledge.

"Q. There was none to you, is that correct? A. No, I knew of none.

"Q. And you knew of none at all? A. Right.

"Q. I believe Mr. Frederick Nichols of Madisonville was his attorney at that time? A. Yes, sir.

"Q. Was there anything at all unusual about the trial to your knowledge or to your observation? A. Nothing unusual other than the psychiatrist testifying. That was the first time I remember a psychiatrist testifying in our court.

"Q. Did you notice anything unusual or peculiar about the defendant during the trial? A. No.

We are of opinion that the court did everything within its power to inquire into the mental capacity of appellant before the original trial and was well within its right to rely upon the psychiatrist who made the examination and certification at that time. We find nothing in the testimony of the witnesses produced in this RCr 11.42 proceeding which overcomes the definite proof that he was competent to stand trial. The report of Dr. Wysocki, which was made about seven months after the trial should not act retrospectively. It does not attempt to state what the condition of McElwain was previously. We are unable

to find that appellant met the considerable burden that was upon him to show that the court failed to inquire into his state of mental health or failed to protect his constitutional rights.

Appellant next contends that a general instruction of insanity as an absolute defense should have been given the jury as well as the instruction of insanity by reason of drunkenness. It is indicated that the whole defense was based on the fact that appellant drank a large quantity of beer on his trip from Chicago to the place of the robbery—something like thirty or forty cans. The issue seems to have been as to whether his condition was such that he could not have had criminal intent or motivation. This was the question submitted to the jury. In any event, we have held that erroneous instructions are not proper bases for a proceeding under RCr 11.42. King v. Commonwealth, Ky., 387 S.W.2d 582.

Appellant was represented by skillful counsel at the trial and no appeal was taken.

We have concluded that the motion was properly overruled and the judgment is therefore affirmed.