Theodore LITTLEFIELD

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

Argued Jan. 13, 1981.

Decided May 19, 1981.

Murray, Plumb & Murray, E. Stephen Murray (orally), Ellyn C. Ballou, Portland, for plaintiff.

Charles K. Leadbetter, Asst. Atty. Gen., Augusta, Paula Van Meter, Asst. Dist. Atty. (orally), Bath, for defendants.

Before McKUSICK C. J., and WERNICK, GODFREY, NICHOLS, ROBERTS and CARTER, JJ.

WERNICK, Justice.

A single justice of the Supreme Judicial Court acting in the Superior Court (York County) denied Theodore Littlefield's petition, filed pursuant to 14 M.R.S.A. §§ 5502 *et seq.*, seeking post-conviction relief by "habeas corpus" from a judgment of conviction of manslaughter that had been entered upon petitioner's plea of guilty to that crime.

We have before us petitioner's appeal from the judgment entered on the decision of the single justice. We deny the appeal and affirm the judgment.

Petitioner claimed post-conviction relief by "habeas corpus" primarily on the ground that despite what appears in the record established by the proceeding conducted pursuant to Rule 11 M.R.Crim.P. in connection with the acceptance of his guilty plea, petitioner's actual mental condition at the

time of the plea was such that in fact his plea was not voluntary and knowing and, therefore, was constitutionally invalid.

On November 17, 1975 petitioner was indicted on the charge of having murdered Ralph Edward Lawrence, Jr., the 2½ year old son of the woman with whom petitioner was then living. When the indictment was returned, petitioner was already being held at the York County Jail on other charges not directly related to the alleged murder. While petitioner was confined on these other charges, before the return of the murder indictment but apparently after petitioner had become suspected of committing the murder, petitioner's attorney moved in the Superior Court to have petitioner examined to ascertain his mental competency to stand trial.

After the return of the murder indictment but before petitioner entered his plea of guilty to manslaughter, petitioner made the claim that at least one other inmate at the York County Jail had assaulted him. He therefore requested to be, and was, transferred to the Cumberland County Jail.

On January 22, 1976, petitioner, in the presence of and assisted by counsel, having been arraigned on the murder indictment, pleaded guilty to the lesser included crime of manslaughter. The record of the proceeding conducted pursuant to Rule 11 M.R. Crim.P. discloses that the State agreed to arrange that petitioner be transferred from the Maine State Prison to the New Hampshire State Penitentiary, for petitioner to serve his sentence in New Hampshire. The record further shows that the Superior Court justice who accepted petitioner's guilty plea, before accepting it, questioned petitioner regarding the voluntariness of his plea and his awareness of the rights he was waiving by pleading guilty. The justice also heard and considered the State's summary of the case against the petitioner. After accepting petitioner's guilty plea, the justice sentenced him to 8½ to 20 years in prison.

After the sentencing, petitioner was taken to the Maine State Prison. During the first week he was there, petitioner refused to eat, fearing that his food was poisoned, and he also attempted suicide three times, twice by hanging and once by setting fire to his mattress. On January 28, 1976 petitioner was admitted to the Augusta Mental Health Institute by the prison psychiatrist, Dr. Ulrich Jacobsohn. On February 5, he was returned to the prison and, sometime in late March, was transferred to the New Hampshire State Penitentiary, where he has remained. While incarcerated in New Hampshire, petitioner was evaluated, and counseled, by psychiatrist Dr. Henry Payson.

In his "habeas corpus" petition for post-conviction relief, as amended, petitioner alleged that his

"mental state was so impaired at the time of the plea that it was not a free and voluntary act nor did he understand the nature and consequences of his act."

The State responded to the amended petition, and a hearing was held on November 1, 1979 before a single justice of the Supreme Judicial Court, acting in the Superior Court. In denying petitioner post-conviction relief, the single justice made an affirmative finding that the petitioner "was competent to make an intelligent voluntary plea of guilty", but the justice's ultimate determination, and his reason for denying relief, was couched in the negative posture that petitioner's "allegations . . . have not been sustained."

By an Order Granting Certificate of Probable Cause (14 M.R.S.A. § 5508), this Court decided to hear petitioner's appeal from the judgment entered in the Superior Court upon the findings and conclusions of the single justice denying post-conviction relief to petitioner. We agree with the conclusion of the single justice that petitioner must be denied the relief he sought because he had failed to meet the ultimate burden of proof borne by him in the circumstances of this case. We therefore deny the appeal and affirm the judgment.

*1.*

■ Petitioner was represented by counsel throughout the period of his incarcera-

tion prior to, and at, the Rule 11 proceeding conducted in connection with the acceptance of his plea of guilty to manslaughter. Essentially conceding that the Rule 11 record reveals that the justice who accepted the guilty plea complied with the requirements of Rule 11,[1] petitioner claimed entitlement to post-conviction relief on the ground that at the time of the plea he was in fact suffering from a mental illness, not disclosed by the record of the Rule 11 proceeding, which caused him to believe that the inmates and guards at the County Jail where he was confined, together with his lawyers and even his father, were engaged in a conspiracy to kill him. Petitioner asserts that thus deluded, he sought to protect his safety by pleading guilty in exchange for the State's assurance that he would serve his sentence outside the State of Maine. The plea, says petitioner, was therefore constitutionally inadequate because it was not in fact voluntarily and knowingly made.

 The record on appeal discloses that before he conducted the Rule 11 proceeding the presiding justice may have learned of information relating to possible doubts about petitioner's mental competence.[2] For the purposes of this appeal, therefore, we will assume that the presiding justice was on notice at the time of the Rule 11 proceeding that petitioner might have psychological problems. Even on this hypothesis, however, we conclude that the presiding justice's Rule 11 inquiry was adequate. The justice directed several questions to the petitioner about the voluntariness of his plea. In addition, at the end of his Rule 11 inquiries addressed to petitioner personally, the presiding justice asked each of petitioner's two attorneys if the attorney wished to address the court "concerning the defendant's responses and awareness of the questions and answers." Neither attorney expressed any concern regarding the petitioner's competency to enter a voluntary and knowing plea of guilty. Such silence of counsel in response to a specific question by the presiding justice speaks loudly in support of the adequacy of the record made by the Rule 11 proceeding—more particularly since at an earlier time counsel may have entertained doubts about petitioner's mental competency, as reflected by the filing of a motion for a psychological examination of petitioner. We stress, too, that during the course of the Rule 11 proceeding, the presiding justice had opportunity to observe for himself the demeanor of the petitioner and the manner in which he responded to questioning. The justice's acceptance of the petitioner's plea signifies that the jus-

1. On appeal petitioner makes the claim, not previously mentioned in the post-conviction proceedings, that the Rule 11 record shows that the presiding justice failed to inform him expressly and specifically that by pleading guilty to manslaughter, petitioner relieved the State of the burden of proving beyond a reasonable doubt that he had committed that crime. To the extent that by this assertion petitioner claims a deficiency in the Rule 11 proceeding, we reject the contention. We have never held that Rule 11 requires the presiding justice to provide the accused with a detailed catalogue of each and every constitutional trial right that a guilty plea waives. To the contrary, we have stated on more than one occasion that "[i]t is not necessary that the defendant be apprised of all collateral legal consequences of the conviction." *Clewley v. State*, Me., 288 A.2d 468, 471 (1972); *State v. Grondin*, Me., 284 A.2d 677 (1971). Here, the justice carefully examined petitioner concerning his awareness of the trial rights being waived by his entering a guilty plea. The justice specifically directed petitioner's attention to his right to remain silent, his right to trial by jury and his right to present witnesses and to cross-examine the witnesses presented by the State. This was a sufficient explanation of the waiver aspects of a plea of guilty to satisfy the requirements of Rule 11.

2. During the time of petitioner's imprisonment prior to the return of the indictment for murder, counsel for petitioner had requested the Superior Court to appoint a psychologist to examine petitioner. The motion was granted, and the examination was conducted by Dr. John Bishop. Dr. Bishop concluded that petitioner was competent to stand trial. Dr. Bishop testified at the habeas corpus proceeding that he had forwarded a copy of his report to the Superior Court sometime prior to the Rule 11 proceeding. Petitioner's counsel also received a letter from Dr. Bishop summarizing his findings and conclusions. However, the record of the Rule 11 proceeding contains no reference by either the presiding justice or petitioner's counsel to Dr. Bishop's examination and conclusions.

tice observed nothing about petitioner's conduct or responses suggesting cause for him to doubt petitioner's competency. Moreover, there was no testimony at the hearing on post-conviction relief that petitioner had acted at the Rule 11 proceeding at all abnormally or in any manner suggestive of mental illness or incompetency.

*2.*

The single justice at the post-conviction relief proceeding having been satisfied, as are we on review, that the Rule 11 proceeding had established a constitutionally adequate initial record that petitioner's guilty plea was voluntary and knowing, the single justice placed on petitioner the ultimate burden to prove that, despite the showing of the Rule 11 record, circumstances existed making petitioner's plea one that was in fact not voluntary and knowing. Petitioner contends that this allocation of the ultimate burden of proof was error, that it is the State which must in any event bear the ultimate burden of proving petitioner's competence to plead guilty.

█ We reject petitioner's contention. In *Cote v. State*, Me., 286 A.2d 868 (1972), we explained that it is *only* where a petitioner successfully demonstrates the existence of a deficient Rule 11 proceeding that the State has the ultimate burden to make a supplemental record establishing that petitioner's guilty plea was voluntary and knowing. *See also Morgan v. State*, Me., 287 A.2d 592 (1972). Here, the single justice concluded, and we have sustained his determination, that there had been an adequate Rule 11 proceeding. Accordingly, the single justice correctly decided that petitioner bore the ultimate burden of proving that when he entered his plea he was in fact not mentally competent and, therefore, his guilty plea was in fact not voluntary and knowing.

*3.*

Petitioner's contention that he was in fact not mentally competent to enter a constitutionally valid guilty plea potentially involves the further question whether the level of mental competency required for a valid plea of guilty is the same as, or different from, that necessary to warrant an accused's standing trial. In *State v. Vane*, Me., 322 A.2d 58, 61 (1974), this Court implied that as to both of these contexts the requisite level of competency is the same.[3] Petitioner, however, contends that competence to plead guilty should be held to demand a higher level of mental competence because a plea of guilty waives, or surrenders, important constitutional trial rights.[4]

We find it unnecessary to decide this issue in the present case. If we assume, without deciding, that the validity of a plea of guilty depends on the accused's having a higher level of mental competency than is necessary to support the validity of his being made to stand trial, we are satisfied that even so, the evidence in this case supports the decision of the single justice that the petitioner failed to sustain his burden of proving that he was in fact mentally incompetent to make a voluntary and knowing plea of guilty to manslaughter.

The totality of the evidence showed a direct conflict on the issue of petitioner's mental competency. Some of the evidence, provided by the testimony of witnesses who fairly may be regarded as objective and disinterested observers, was to the effect that petitioner was not only mentally com-

3. In *Thursby v. State*, Me., 223 A.2d 61, 66 (1966) we described competency to stand trial as follows:
 "Competence to stand trial sufficient to meet the requirements of due process means that the accused is capable of understanding the nature and object of the charges and proceedings against him, of comprehending his own condition in reference thereto, and of conducting in cooperation with his counsel his defense in a rational and reasonable man-

ner. *Glenn v. People*, 9 Ill.2d 335, 137 N.E.2d 336 (1956); *Withers v. People*, 23 Ill.2d 131, 177 N.E.2d 203 (1961); *Commonwealth v. Strickland*, 375 S.W.2d 701 (Ky.1964)."

4. Among cases cited by petitioner as supporting his contention are *Sieling v. Eyman*, 478 F.2d 211 (9th Cir. 1973), *United States v. David*, 511 F.2d 355 (D.C.Cir.1975) and *Saddler v. United States*, 531 F.2d 83 (2nd Cir. 1976).

petent to stand trial but also was mentally competent to, and did in fact, understand all of the discussions occurring throughout the course of the Rule 11 proceeding. It was, therefore, the exclusive prerogative of the single justice as fact-finder to conclude that petitioner had failed to discharge the ultimate burden reposing on him of proving that, despite the Rule 11 record showing of his competency to plead guilty, he was not in fact mentally competent to, and did not in fact voluntarily and knowingly, plead guilty to the crime of manslaughter.

The entry shall be:

Appeal denied; judgment affirmed.

All concurring.