## Ottley v. Herriford.

(Decided November 13, 1914.)

### Appeal from Adair Circuit Court.

1. Elections—Contested Election—Recount of Ballots—When Recount Will Not Prevail Over Certificate of Election Officers.—The ballots cast in an election furnish the best evidence of the vote cast at such election, provided it be clearly shown that their identity is assured and their integrity established; otherwise the certificate of the officers of the election should prevail.

2. Elections—Contest—Character of Election Officers and Manner of Discharging Duty:—Where it is shown by the evidence that the election officers are sober, intelligent and honest persons and that they intelligently, carefully and impartially performed their duties in receiving, canvassing and certifying the vote, it requires stronger evidence to overcome their returns than would be necessary if they had exercised less care or had been men of less intelligence and integrity of character.

3. Elections—Contest—Evidence.—Evidence examined and held to show that the ballots had been tampered with; therefore the circuit court did not err in refusing to adjudge that the certificate of the

election officers should be overthrown by a recount made of the ballots in the presence of the court.

BROWN & NUCKOLS for appellant.

JONES & GARNETT and O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

At the regular election held in the County of Adair, November 4, 1913, the appellant, W. Tanner Ottley, and the appellee, G. T. Herriford, were opposing candidates for the office of county judge of that county, the former being the nominee of the Democratic party and the latter the nominee of the Republican party. According to the tabulation made by the County Board of Election Commissioners of the votes cast in the county, as shown by the certified returns from the several voting precincts, they found that appellant received 1340 votes and the appellee 1373 votes, which gave appellee a majority of 33 votes. The election commissioners thereupon awarded the certificate of election to appellee, who, within the time fixed by law, by giving the proper bond and taking the required oath, duly qualified as county judge and took upon himself the performance of the duties of the office.

On November 13, 1913, the appellant, by petition filed in the Adair Circuit Court, instituted this contest against the appellee for the office in question. It was alleged in the petition that thirteen illegal votes had been cast and counted for appellee; that in each precinct of the county various votes cast for appellant had been wrongfully counted by the election officers for appellee or not counted at all; and that in West Columbia precinct No. 1 twenty-five legal votes that the ballots from that precinct would show were cast for him were not counted for him, but were counted for appellee. For these reasons a recount of the vote from all the precincts in the county was prayed.

By an amended petition filed November 19, 1913, it was alleged that two illegal votes had been cast for appellee and should be deducted from his total vote. Appellee filed a demurrer to the petition, and without waiving the demurrer at the same time filed an answer and counterclaim. The demurrer was later overruled. The answer and counterclaim traversed the averments of the petition as amended and alleged that six illegal

votes had been cast for appellant which should be deducted from the total vote counted for him. The averments of the answer as to these six alleged illegal votes were not controverted by reply or otherwise. Appellant failed to take any proof with reference to the thirteen alleged illegal votes sought to be taken from appellee.

At the succeeding term of the circuit court, which was held in January, 1914, notwithstanding the time within which appellee was entitled to take proof had not expired, a recount of the vote was made by consent of the parties. This recount took place near the end of the court and was concluded but one day before the expiration of the term. It showed that in the fourteen precincts of the county outside of West Columbia precinct No. 1, appellant received 1248 legal votes and appellee 1301 legal votes, which gave the latter a gain of 56 over the tabulation made by the county election commissioners. The certificate returned by the election officers of West Columbia precinct No. 1, showed that appellant received in that precinct 96 votes and the appellee 81 votes, and the addition of the vote received by each candidate in this precinct to his vote received in the other fourteen precincts, showed a majority in favor of appellee of 38 votes; but on the recount the ballots in West Columbia precinct No. 1, apparently showed that appellant had received 138 votes and appellee only 50 votes, and this result, if it had been adopted by the court, would have made appellant's entire vote in the county 1387 and appellee's 1351, a majority of 36 votes for appellant.

It should be remarked that there was also pending at the same time a contest between E. A. Strange, the Democratic candidate for School Superintendent, and Tobias Huffaker, an independent candidate for that office. The two contests were heard together and the recount attempted to be made as to both. In making the recount the tabulation of the vote was made by four commissioners appointed by the court. At the conclusion of the recount and before the court had announced or entered its judgment as to the result, appellee offered and was allowed to file an amended answer and counterclaim, in which it was in substance alleged that the ballots in West Columbia precinct No. 1, had been fraudulently tampered with and altered, following the counting and return thereof by the election officers of that precinct, after the tabulation and certification made of the votes from that precinct and the entire county by the

county election commissioners and before the recount
by the court, whereby votes were marked on the ballots
of that precinct to appellant which he did not receive
and others which had been cast in that precinct for ap-
pellee and McFarland, the Progressive candidate for the
office of county judge, had been so changed as to make
them appear to have been voted for appellant. It was
further alleged in the amended answer and counterclaim
that this fraudulent changing of the vote was not known
to or discovered by appellee until the vote was recounted
in the presence of the court. At the time of the filing of
the amended answer and counterclaim, namely, Jan-
uary 28, 1914, the following order was entered by the
court:

"This cause being under submission and the court
having recounted all the ballots in the fifteen voting
precincts of Adair County in the contest for the office of
county judge of Adair County, between the plaintiff and
defendant involved in this action, and ascertained same
as shown by the ballots, the defendant produced and
offered to file an amended answer herein and asked for
the continuance of this case, to which the plaintiff ob-
jected and asked the court to declare the result of said
count and to adjudge the plaintiff legally elected to the
office of county judge of Adair County at the November
election, 1913; to which the defendant objected. There-
upon the court declined to adjudge the plaintiff elected
and overruled the plaintiff's objections to the filing of
said amended answer, and continued this action, to all
of which ruling of the court the plaintiff excepts."

This order continued the case to enable the appellee
to take proof in support of the allegations of the
amended pleading as to the fraudulent changes made in
the ballots from West Columbia precinct No. 1, and an
order was taken by appellant controverting of record the
allegations of the amended answer and counterclaim.

On the 29th of January, 1914, another order was
entered by the court, which, while in no way conflicting
with that copied above, was more elaborate in detail as
to what occurred during the recount of the ballots in
the presence of the court, the filing of the amended an-
swer and counterclaim, and the action taken by the court
in continuing the case; but it likewise shows that the
court refused to adjudge that the recount of the vote
showed appellant entitled to the office in question. Fol-
lowing the continuance of the case, proof was taken in

the form of depositions by both parties upon the issues
of fact made by the amended answer and counterclaim,
and on the final hearing had at the May term, 1914, of
the circuit court, the court by its judgment declared
appellee entitled to the office in controversy. The judg-
ment, omitting its immaterial parts, is as follows:

"And the Court being sufficiently advised, adjudges
that the envelope containing the ballots of the said West
Columbia precinct, was not sealed and certified as re-
quired by law, by the fact that only two judges signed
their names, near the seal on said envelopes, and that
the ballots from said precinct and the envelope contain-
ing same, bear evidence of having been tampered with,
changed and altered, since said ballots were inspected,
canvassed and certified by the election officers, at said
precinct, and before the recount had at the January Term
of this Court, and that therefore the certificate of the
election officers of said precinct, showing the legal votes
received by the plaintiff and defendant, at said precinct,
at said election, is the best evidence of the votes re-
ceived by plaintiff and defendant, at said precinct, which
shows that plaintiff received at said precinct 96 legal
votes and that defendant received at said precinct 81
legal votes, which is now adjudged to be the number of
legal votes received by plaintiff and defendant, at said
precinct, which taken with the other votes received by
plaintiff and defendant, in the other fourteen precincts
of the county, showing that the plaintiff received at said
election, 1340 legal votes, and that the defendant received
at said election, 1373 legal votes, and that the said Herri-
ford received a majority of 33 legal votes for said office
of County Judge, for a term of four years, beginning
January, 1914. And it is now therefore adjudged by
the court, that the defendant G. T. Herriford, was duly
elected, at said election, County Judge of Adair County,
and is entitled to hold said office according to law, and
that the plaintiff's petition be dismissed, and that the
defendant recover against him, the plaintiff, his defend-
ant's costs herein expended."

The appellant's dissatisfaction with this judgment
led to the present appeal. The briefs of counsel for ap-
pellant and appellee eliminate from this case any ques-
tion as to the legality of the returns from all other pre-
cincts of the county and confine the controversy between
the parties to the election in West Columbia precinct No.
1. So, the single question to be determined on this ap-

peal is, as to whether the result of the election in that precinct is to be determined by the returns made by the election officers of the precinct, or by the recount made of the ballots of that precinct; and the decision of this question depends upon whether the ballots were preserved intact down to the time they were brought into court and recounted by the commissioners appointed by the court for that purpose. If they were, the recount made by the commissioners appointed by the court must prevail. If they were not so preserved and were changed as claimed by appellee, the returns from that precinct made by the election officers thereof, as ascertained and certified by the county election commissioners, must prevail.

The testimony of Walker Bryant, the county clerk, shows that following the election all the ballot boxes from the various precincts, including West Columbia precinct No. 1, were brought to his office and delivered to him by the proper election officers; that the box from West Columbia precinct, when delivered to him, was secured by two locks as required by law; that on the morning following the election he opened up this box in the presence of two election officers and found that the ballots therein seemed to be properly sealed in the envelope provided for that purpose; that the tally sheet and other papers required to be in the box were there; that he took the election precinct seal from the box and delivered it to M. Cravens, a Democrat and one of the judges of the election, and after relocking the box delivered one key to the Democratic and one to the Republican officer of the election. He further testified that this box, together with the ballot boxes from the other precincts, were then placed on top of some book-cases in an apartment of his office equipped with iron shutters at the windows and with an iron shutter door; that the window shutters, which were fastened by means of a cross-bar on the inside, were always closed at night and on Sundays; that the iron door was fastened with a No. 3 combination lock; and that the door was always kept fastened and the combination turned day and night when the clerk or his deputy was not in the office. It further appears from the record that when the box containing the ballots from West Columbia precinct was brought before the circuit judge at the January term it was locked and that he caused it to be opened by prying the staple of each

lock out of the hasp, the keys to the locks not having been brought in court.

It does not appear, however, that the attention of the court, or commissioners making the recount of the ballots, was called to the condition of the envelope or ballots from the West Columbia precinct during the progress of their work, or that they were asked to make an examination of the ballots for the purpose of ascertaining whether they had been tampered with or changed. Indeed, it does not seem to have occurred to the appellee or his counsel that the ballots had not been preserved intact between the time they were returned to the office of the county clerk and the bringing of them into court for the recount, until their altered condition was disclosed about the time the recount was completed by information advising them that they had been tampered with, which caused the filing of the amended answer and cross petition making complaint thereof. The information referred to was as to certain overtures made the county clerk by appellant, Strange, the candidate for county superintendent of schools, and another acting for them, whereby they proposed, with the assistance or connivance of the clerk, to obtain access to the ballots and so alter them as to make them show that both appellant and Strange had received a majority of votes over their opponents, respectively. As the judgment of the circuit court was based on the evidence introduced by appellee to prove these overtures and the probable execution of the plan they suggested, together with that furnished by alterations alleged to have been made on numerous ballots returned from West Columbia precinct, it remains to be determined whether this evidence is sufficient to support the judgment.

As said in Thomas v. Marshall, 160 Ky., 168:

"There is no difficulty about the law applicable to this case. The rule announced in Edwards v. Logan, 114 Ky., 312, which was adopted with elaboration from Bailey v. Hurst, 113 Ky., 699, had been adhered to in a number of cases. In that case it was thus stated:

" 'The rule may be stated to be that, where the ballots are preserved so that their identity is assured, they can be counted during a contest; and they are undoubtedly better evidence of the vote cast than the returns, and should prevail where there is a difference. But befor a recount of the ballots should be allowed to rebut

the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots had not been tampered with since the election, and that those offered in evidence are the identical ones cast. * * * Every consideration of public policy, as well as the ordinary rules of evidence, require that the party offering this evidence should establish the fact that the ballots are genuine. It is not sufficient that the mere probability of security is proved, but the fact must be shown with a reasonable degree of certainty. If the boxes have been rigorously preserved, the ballots are the best and highest evidence, but, if not, they are not only the weakest, but the most dangerous evidence.'

"After citing a number of authorities, the court further said: 'From these authorities this court holds: That the ballots cast in an election are the primary and best evidence of the voters' will as expressed therein, and that in case of a contest, as between the certificates of the officers of election and the ballots, the ballots are the best evidence, but that this is conditioned strictly upon the fact that the integrity of the ballots is clearly established; otherwise the certificate of the officers of election should prevail. That when the ballots are produced from the custody of the officer, whose duty it is to preserve them, are shown to have been preserved from intermeddling from unauthorized persons, and are apparently unchanged, they will be received as evidence of what they may show upon their face; but where they may have apparently been tampered with, or where opportunities have been afforded to unauthorized persons, or to persons interested to tamper with them, then the burden is upon the party producing and relying upon such ballots to establish their integrity clearly and satisfactorily by the evidence.' Hamilton v. Young, 26 Ky. L. R., 447; Galloway v. Bradburn, 119 Ky., 49; Scholl v. Bell, 125 Ky., 750; Browning v. Lovett, 139 Ky., 480; Baker v. Dinsmore, 138 Ky., 277; Powell v. Horn, 159 Ky., 532; Snowden v. Flanery, 159 Ky., 568; McEuen v. Carey, 123 Ky., 536."

It is well to here remark that the petition of appellant neither charges nor imputes any fraud upon the part either of the election officers or the county election commissioners, and that the election officers, challengers and inspectors of the West Columbia precinct were equally divided between the Democratic and Republican parties;

and it is admitted that all of them were sober, intelligent, honest, careful men; and, according to the evidence, their duties were intelligently and impartially performed during the election and at the time of canvassing the votes and certifying the result. The evidence also shows that three out of the four election officers voted for appellant; that in canvassing the vote Davidson, one of the officers of the election, did the calling of the votes from each ballot and that two others, Mercer and Cravens, stood one on either side of him, examined the ballots and calling of the vote and saw that the calling was correct. Three others, Wilson, Taylor and Winfree, watched Flowers, the clerk of the election, record the vote on the tally sheet; and, all of them testified, after the conclusion of the count, the ballots were properly strung and the envelope sealed as required by the provisions of the election law.

Under such circumstances it is most improbable that any mistake could have been made in the election officers' work of counting and certifying the vote of West Columbia precinct; but, notwithstanding the manifest care and fidelity with which their work was performed, and that with which the county election commissioners, in later tabulating the vote from the returns of that precinct and certifying the result, was performed, we find that the recount of the votes from West Columbia precinct, made by the commissioners of the circuit court's appointment, apparently disclosed 73 more votes for appellant in that precinct than were found by the precinct election officers or the county election commissioners. What caused this difference in the ballots? It is manifest that it was produced by the alteration of 46 ballots from that precinct, which were changed from appellee and McFarland to appellant. It is further manifest from the appearance of the ballots that the stencil employed in making these changes was smaller than those used at the election, and that the ink was not of the precise color of that used at the election. Moreover, there is further evidence of tampering with the ballots, for those added to appellant all appear to have been made by the same stencil, with greater pressure on one side than the other, as if the stencil had been held and the marks all made at the same time by a person standing or sitting in the same position.

In addition, the appearance of the envelope containing the ballots from the West Columbia precinct fur-

nished some evidence of having been tampered with. According to the evidence, when returned to the office of the county clerk the flap of the envelope seemed to be securely sealed, but when the vote was recounted in the presence of the court, while it appeared to be still sealed at the point of the flap, the edges of the flap on either side of the seal from the point to the ends did not adhere to the body of the envelope, and it was discovered during or at the close of the recount that there was a red splotch on the end of the envelope which was not on it when the ballot box from West Columbia precinct was returned to the office of the county clerk.

W. T. Price, clerk of the Circuit court, testified in substance with reference to the appearance of the envelope, that he discovered the red splotch on the end of the envelope, the presence of mucilage along the edge of the seal, and on closer examination it was evident to him that the envelope had been entered from the end of the envelope containing the red splotch. Price further said in answer to a direct question put to him: "I have examined the envelope containing the ballots as returned by the election officers, and from that examination I find from the appearance of that envelope it was entered from the lower or butt end of it. It has been folded in and was sealed with mucilage; it appears that it had been opened and resealed by putting additional mucilage on it."

The opening in the envelope referred to was, as it appears, enlarged by the judge of the circuit court, for it is recited in the judgment that in examining the envelope at the May term when the case was finally decided the court made part of the rent in the bottom of the envelope. After the recount in the presence of the court the ballot box and ballots were by its order deposited in the vaults of a bank in Columbia, where they remained until the May term of the court and the case was finally decided.

It conclusively appears from the evidence outlined above that the ballots were not, when the recount was had, in the same condition as when placed in the ballot box by the election officers, and equally evident that the envelope was by some means entered and the ballots changed as indicated between the time the ballot box and contents were returned to the office of the county clerk and the recount made of the vote by the commissioners

appointed by the court. That the work was shrewdly done cannot be doubted, and that it was done in the interest of appellant, and Strange, the contesting candidate for county school superintendent, is equally free from doubt, but by whom it was done is not shown.

The deposition of Walker Bryant, county clerk, shows that he did not do it and that it was not done with his knowledge or connivance; and furthermore, that he took, as he believed, every precaution to prevent it. He testified, however, to conversations separately had with appellant, Strange and Plato Wade the day. after the election, in which each of them in substance not only intimated that an attempt would be made to so change the ballots as to secure the election of appellant and Strange to the offices claimed by them, respectively, but also requested him to so arrange as that the room containing the ballots might be entered for that purpose. Proof of the conversations Strange and Wade had with Bryant was as competent against appellant as his own conversation with Bryant, for he sent them to him to make the request mentioned. Bryant, however, indignantly refused his assent to what was proposed. Proof was also made by reliable witnesses that one Dr. Smith confessed to have entered the room containing the ballots and to have made such changes in the ballots from West Columbia precinct as would have secured the offices in question for appellant and Strange. The testimony as to the confession of Smith was, however, properly excluded by the court, as it was not made to or in the hearing of appellant and he was not shown to have been connected with the act of Smith. It was hearsay evidence and therefore incompetent for any purpose. Neither Strange, Wade nor Smith testified in the case. Appellant did testify, however, and denied making any overture to Bryant looking to the entering of the room containing the ballots or making alterations in them. In this, however, he was contradicted by his own witness, Coffey, who testified that appellant admitted to him that he had with Bryant the conversation, in substance, set forth in Bryant's deposition.

It appears from the deposition of Bryant that the combination of the lock on the door containing the ballot boxes was known only to his deputy and himself, and that he had never revealed the combination to any one. Whether his deputy had done so can-

not be told, as he did not give his deposition in the case and was not required to testify.

This evidence indicates who expressed a desire to obtain access to and tamper with the ballots from West Columbia precinct, and the motive for doing so, but stops short of showing who made the alterations in the ballots or by what means the person or persons who made them effected an entrance into the room in which they were kept or the means by which the box containing them was opened.

For the purposes of this case it is not material how or by whom the alteration of the ballots was accomplished. The fact that it was done, so disqualified the ballots from the West Columbia precinct as that they could not be accepted as evidence to discredit the returns of the election officers of that precinct; hence appellant, even if innocent of participation therein, cannot be benefited by the fraud.

The court below having found appellee entitled to the office in question, the judgment is affirmed.