Michael Tyrone **TOLLEY**, Appellant,

v.

**COMMONWEALTH of Kentucky,**
Appellee.

No. 93–SC–922–DG.

Supreme Court of Kentucky.

Feb. 16, 1995.

Marie Allison, Asst. Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant.

Chris Gorman, Atty. Gen., Paul D. Gilbert, Asst. Atty. Gen., Crim. Appellate Div., Frankfort, for appellee.

SPAIN, Justice.

Michael Tolley seeks review of a decision of the Court of Appeals, affirming an order of the Jefferson Circuit Court entered on May 13, 1992, authorizing personnel of Central State Hospital (CSH) to forcibly medicate Tolley pursuant to a treatment plan previously submitted by the mental hospital. Having granted discretionary review, we now affirm.

The principal issue is whether the specific reference in KRS 202A.196(3) to "the district court" in outlining the procedure to be followed when a mental hospital seeks a determination as to the appropriateness of a treatment plan, was intended by the General Assembly to be a mandatory direction of an

exclusive forum. The appellant argues in the affirmative, and accordingly contends that the Jefferson Circuit Court lacked jurisdiction to entertain the petition from CSH as well as to enter its order approving the treatment plan.

An explanation of our holding requires a brief review of the facts and of the chronological sequence of prior proceedings. First of all, Michael Tolley was indicted in 1986 for murder in the April 21, 1986, shooting death of an automobile body shop repairman. The victim was shot four times in the chest and twice in the head after he allegedly refused to repair Tolley's van and turned his back on Tolley. After the Jefferson Circuit Court found him incompetent to stand trial, Tolley was ordered committed to CSH for 360 days. Four days later he escaped from the hospital but was subsequently recaptured and returned to CSH. The record on appeal does not disclose the date. Tolley has been reindicted at least two or three times since and each time recommitted to CSH by the circuit court.

On March 5, 1991, Tolley was reindicted and on June 10, 1991, his public defender moved the circuit court for another competency evaluation. She specifically requested the appointment of Dr. Phillip Johnson, a forensic psychologist, who had previously examined Tolley and was familiar with his history. Judge Thomas Knopf granted the motion, whereupon Dr. Johnson made the requested examinations on September 4 and November 27, 1991. His report bore the latter date and once again stated the opinion that Tolley was incompetent to stand trial, being paranoid-schizophrenic. In Dr. Johnson's opinion, Tolley was actively psychotic and posed a very significant threat to the community.

On December 17, 1991, another hearing was held in the Jefferson Circuit Court before Judge Knopf, who once again found Tolley incompetent to stand trial. He further found Tolley to be a mentally ill person who presented a danger to himself and others as a result of his mental illness, but who could benefit from treatment in a mental hospital. The order further found that, pursuant to KRS 504.110(2), the circuit court had authority to conduct this involuntary hospitalization proceeding and that Tolley met the criteria for involuntary hospitalization set out in KRS 202A.026. Thereupon the court ordered Tolley involuntarily hospitalized at CSH for an additional 360 days. On the same day, Judge Knopf entered an additional order dismissing the 1991 indictment without prejudice, reciting the incompetency of Tolley, and stating that it was not likely that he would become competent in the foreseeable future.

Two months later, on February 11, 1992, a CSH physician filed a form in Judge Knopf's division of Jefferson Circuit Court, requesting a de novo hearing to determine whether Tolley should be ordered to participate in his prescribed treatment plan, including the administration of certain psychotropic medications; i.e., anti-psychotic drugs which normalize behavior and improve functioning. Subsequently, on April 30, 1992, the Commonwealth's Attorney's office filed a similar motion in the same court, and its contents explain why there was a delay in holding the CSH February 11th requested hearing. The motion stated in part:

> [D]efense counsel and the Commonwealth met informally to discuss the jurisdictional merit of a De Nov[o] Motion for Involuntary Treatment made in Circuit Court. It was agreed at that time that insofar as the applicable statute clearly reads that all such motions shall arise in the District Court that the matter would best be handled in that Court. While the Motion was not remanded, no further Circuit Court action was pursued upon the understanding that the District Court would entertain the Motion in question.

> The Commonwealth was subsequently informed by counsel for the defendant and by a representative of the Office of the Jefferson County Attorney that the District Court did *not* have jurisdiction in the matter and as such could not go forward on the Motion. Assistant County Attorney, Martin Kasdan referred the Commonwealth to a recent Kentucky Court of Appeals decision as the controlling authority on questions of jurisdiction in this type of

case. *Schuttemeyer v. Commonwealth*, Ky.App., 793 S.W.2d 124.

In accordance with the above, counsel for both sides proceeded to a hearing of the matter in Judge Knopf's division of Jefferson Circuit Court on May 11, 1992. Both a clinical psychologist and a psychiatrist from CSH testified concerning the need for and the appropriateness of administering antipsychotic drugs to Tolley. Both testified that the treatment program prescribed for Tolley was the least restrictive possible in order to protect himself and others. It is designed to reduce his psychotic symptoms so that he can function at a higher level and earn a transfer out of the maximum security area and into a less structured environment. The drugs would also help him with his moods and thought disorders, it is hoped. Tolley refuses to take his medication because of his paranoid ideations and irrational thinking.

Following the hearing, Judge Knopf entered an order on May 13, 1992, approving the tendered treatment plan and authorizing the administration of various named drugs to Tolley "as may be deemed necessary to effectively treat Mr. Tolley's psychoses." Counsel for Tolley filed a timely notice of appeal to the Court of Appeals.

Relying heavily on its previous holding in *Schuttemeyer v. Commonwealth*, Ky.App., 793 S.W.2d 124 (1990), the Court of Appeals held that the Jefferson Circuit Court properly exercised jurisdiction over appellant Tolley herein with regard to both his involuntary hospitalization and the subsequent approval of a treatment plan for him.

In *Schuttemeyer*, the defendant was found by a jury in the Kenton Circuit Court not guilty by reason of insanity of wanton endangerment in the first degree. The circuit judge held a preliminary hearing and found probable cause to believe that the defendant should be hospitalized. The court further ordered a mental status evaluation to be made pursuant to KRS 504.030 and KRS Chapter 202A. Following the examination and report to the court, a final hearing was held, which resulted in the defendant's being ordered on March 3, 1988, involuntarily hospitalized at Eastern State Hospital for 360 days. A subsequent order of the circuit court was entered on June 15, 1988, directing Schuttemeyer to follow the prescribed treatment plan.

On appeal, the principal contention of *Schuttemeyer* was that exclusive jurisdiction regarding KRS Chapter 202A proceedings was vested in the district court rather than in the circuit court.[1] KRS 202A.014 provides:

**Jurisdiction.**—All proceedings for the involuntary hospitalization of mentally ill persons shall be initiated in the district court of the county where the person to be hospitalized resides or in which he may be at the time of the filing of a petition.

Notwithstanding this language, the *Schuttemeyer* court held that the language of KRS 504.030(1) took precedence and clearly vested jurisdiction in circuit court over the involuntary hospitalization of defendants being tried therein. That statute provides:

**Disposition of person found not guilty by reason of insanity.**—(1) When a defendant is found not guilty by reason of insanity the court shall conduct an involuntary hospitalization proceeding under KRS Chapter 202A or 202B.

Judge Clayton in the *Schuttemeyer* opinion at p. 127 reasoned that if the holding were otherwise,

[t]here is no mechanism by which a district court would learn of such a verdict in circuit court. As a result, it would be absurd to expect a district court, which Schuttemeyer claims is "the court," to conduct a hearing about a case of which it is not informed. *See Bailey v. Reeves*, Ky., 662 S.W.2d 832, 834 (1984). Thus, we find "the court" must refer, as it would in common usage, to the court in which the matter was tried. *See Young v. Board of Education of Graves County*, Ky.App., 661 S.W.2d 787, 788 (1983).

The *Schuttemeyer* opinion continues:

1. This issue could only arise after July 1982, since all involuntary hospitalizations before the creation of the district court in January of 1978 by the Judicial Reform Amendment to the Kentucky Constitution, and for some four (4) years thereafter, were vested exclusively in the circuit court.

We are further persuaded to our holding by the language of KRS 504.110, which was enacted at the same time as KRS 504.030. Notably, it provides that if the court finds a defendant incompetent and substantially unlikely to regain competency in the foreseeable future, then it shall conduct a hearing regarding involuntary hospitalization under KRS Chapter 202A. KRS 504.110(2). We find that the two statutes, when construed together, establish that the court is the one in which the verdict of not guilty by reason of insanity (KRS 504.030) or the determination of incompetency (KRS 504.110) is made. *See Daviess County v. Snyder*, Ky., 556 S.W.2d 688, 691 (1977). In this matter, "the court" was the circuit court, since it had tried Schuttemeyer. Therefore, the trial court had jurisdiction to consider the involuntary hospitalization of the defendant under KRS Chapter 202A.

■ After discussing the *Schuttemeyer* opinion, the Court of Appeals opinion herein reached the question as to whether, having established that the circuit court did indeed have jurisdiction to involuntarily hospitalize Tolley, it also had jurisdiction to review the treatment plan subsequently prescribed for him by the mental hospital. The court concluded that the circuit court would have such jurisdiction since the district court would have no knowledge of the hospitalization or the patient. The comment is made, "[t]o allow the district court to then have jurisdiction over the treatment plan established pursuant to the involuntary hospitalization proceeding in circuit court would be absurd." We agree.

Next, Tolley's counsel argues that the circuit court erred in including "... the goal of restoring competency to stand trial as part of [the] rationale for justifying the forcing of mind-altering drugs on Tolley." In support of this claim, counsel cites the mental hospital's plan of treatment, including "a Long Term goal of 'diminution of psychotic symptoms which will allow pt to resume active role in treatment planning & legal situation,' trial court's comments during hearing, TAPE and Introduction to Appellee's Brief." It is asserted that Tolley's due process rights under the U.S. and Kentucky Constitutions "were violated by the improper commingling of Tolley's dismissed criminal case with his current civil case."

Like the Court of Appeals, we too believe this claim is without merit. The order of the circuit court approving the treatment plan, entered on May 13, 1992, from which this appeal was taken, makes absolutely no reference to Tolley's competence to stand trial, but rather refers to treatment of Tolley's psychoses.

■ Tolley's final contention is similarly devoid of merit. He asserts that the trial court did not properly weigh the factors required by the "forced treatment statute," KRS 202A.196(3)(a), (b), (c) and (d), in finding that the benefits of the forced medication outweighed the possible side effects. The statute sets out the following four factors to be considered by the court:

(a) Whether the treatment is necessary to protect the patient or others from harm;

(b) Whether the patient is incapable of giving informed consent to the proposed treatment;

(c) Whether any less restrictive alternative treatment exists; and

(d) Whether the proposed treatment carries any risk of permanent side effects.

At the May 11, 1992, hearing in the Jefferson Circuit Court, Judge Knopf heard testimony from Dr. Jennifer Jacobs, a clinical psychologist at CSH, concerning the treatment plan prescribed for Tolley. Dr. Calvin Turns, a psychiatrist at CHS, outlined the need for and the appropriateness of administering one or more antipsychotic drugs to Tolley, to alleviate his mental suffering and anguish, to improve his functioning, and to normalize his behavior. Both doctors testified that the prescribed treatment program was the least restrictive possible in order to protect himself and others. Both also testified that Tolley was not capable of giving informed consent to treatment. Dr. Turns described some possible permanent side effects which occur very infrequently but concluded that the potential benefits far outweighed the risk of such possible side effects.

We agree with the Court of Appeals that the trial court's findings were consistent with the testimony and opinions of Dr. Jacobs and Dr. Turns, and thus its findings were supported by substantial evidence, and accordingly, under CR 52.01, could not be disturbed on appeal.

We affirm the trial court and the Court of Appeals.

LAMBERT, REYNOLDS, and WINTERSHEIMER concur.

PAUL K. MURPHY, Special Justice, dissents by separate opinion which STEPHENS, C.J., and STUMBO, J., join.

LEIBSON, J., not sitting.

PAUL K. MURPHY, Special Justice, dissenting.

Respectfully, I dissent.

The issue in this case is which court has jurisdiction over "a de novo determination of the appropriateness of the proposed treatment" when a patient who has been civilly committed refuses to participate in the treatment plan.

KRS 202A.196(3) clearly places the jurisdiction in the *District Court.* The statute in pertinent part states that when a patient refuses to comply with a treatment plan, the hospital may petition the *District Court* for a de novo determination of the appropriateness of the proposed treatment.

When the words of the statute are clear and unambiguous and express the legislative intent, there is no room for construction or interpretation and the statute must be given its effect as written. *Berry v. Commonwealth,* Ky., 782 S.W.2d 625 (1990); *McCracken County Fiscal Court v. Graves,* Ky., 885 S.W.2d 307 (1994). KRS 202A.196(3) is clear and unambiguous and must be given its effect by this Court.

It may well be argued that in holding the competency hearing, the circuit court has just heard the same witnesses and the same evidence and that it would result in duplication and a waste of judicial time and money to now repeat the process in the District Court. The Court of Appeals goes so far as to say that it would be absurd to do so. Be

that as it may, KRS 202A.196(3) is plain on its face, and it is the function of the legislature and not this Court to amend the clear wording of this statute.

STEPHENS, C.J., and STUMBO, J., join this dissenting opinion.