COMMONWEALTH of Kentucky,
Appellant,

v.

Terry Michael KING, Appellee.

No. 95–SC–361–DG.

Supreme Court of Kentucky.

April 24, 1997.

As Amended April 25, 1997.

Rehearing Denied Oct. 2, 1997.

A.B. Chandler, III, Attorney General, Dina Abby Jones, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellant.

Julie Namkin, Department of Public Advocacy, Frankfort, for Appellee.

GRAVES, Justice.

Appellee, Terry Michael King, was convicted of conspiracy to sell or possess with intent to sell over five pounds of marijuana. He was fined $7,500 and sentenced to five years imprisonment, probated for five years. The Court of Appeals reversed and remanded for a new trial upon a finding of improperly admitted hearsay evidence. We granted discretionary review. The issues raised on appeal are: (1) the proper application of KRE 801A(b)(5), the hearsay exception for statements made during and in furtherance of a conspiracy; and (2) the duty of a reviewing appellate court to give proper deference to the trial court's findings that are supported by the evidence.

The Metro Narcotics Division of the Louisville Police Department and Detective Greg Treadway, an undercover officer, arranged a reverse sting operation targeting Eugene Boyd, a co-defendant of Appellee. On Octo-

ber 24, 1990, the sting was executed at Boyd's residence. As Detective Treadway approached the residence, he spotted Appellee's van parked in front of Boyd's residence. Since the presence of a van was unexpected, he contacted Boyd, via walkie-talkie, for clarification. Boyd responded, "It's okay, that's my money man." Detective Treadway then delivered a sample of the marijuana to Boyd's back door. Explaining that he had to talk to his money man, Boyd left the room and reappeared shortly thereafter carrying a zippered pouch containing $17,000. Detective Treadway gave Boyd the pound of marijuana which Boyd took to another part of the house. Upon returning, Boyd stated that he liked the sample and that if the rest of the marijuana was of the same quality, he would take all fifteen pounds. Police officers stormed the house once Detective Treadway had taken Boyd outside under the pretense of obtaining the rest of the marijuana.

Detective Warman entered the kitchen and found Appellee fumbling in a garbage can. Appellee was then patted down, seated at a kitchen table, and given instructions not to move. The pound of marijuana was in the trash can. However, neither the marijuana nor the trash can had Appellee's fingerprints.

Appellee and Boyd were arrested, indicted, and tried together for conspiracy to sell or possess with intent to sell over five pounds of marijuana. Boyd pled guilty after opening statements and the case proceeded against Appellee. Appellee moved to exclude Boyd's out-of-court hearsay statements which identified Appellee as the money man.

Appellee claims he went to Boyd's residence because Boyd sold him an engine for his van and the van was vibrating excessively. Appellee contends Boyd's girlfriend admitted him into the house and instructed him to wait in the kitchen because Boyd was busy. While he was waiting, the police stormed the house and arrested him. In ruling on Appellee's suppression motion, the trial judge rejected Appellee's explanation of his presence at the crime scene and inferred that he was there for the marijuana transaction. Apparently, the trial court did not find it to be a satisfactory explanation that a person entering the premises to complain about a van engine happened to be found fumbling in a garbage can containing a bag of marijuana. Because the trial judge was in a unique position to hear and observe the witnesses, we must defer to the trial court's findings which are reasonable and logical inferences from the facts.

At trial, the court agreed with the Commonwealth's argument that Boyd's statement that Appellee was the "money man" was admissible hearsay under KRE 801A(b)(5), which provides that the out-of-court statements by a co-conspirator made during the course and in furtherance of the conspiracy are admissible. However, the Court of Appeals reversed and ruled that admissibility of the hearsay statement under KRE 801A(b)(5) would require some independent evidence of conspiracy between Boyd and Appellee. By using a preponderance of the evidence standard for proof of the conspiracy, the Court of Appeals held *de novo* that the trial court lacked sufficient evidence. We disagree and reverse.

Though the lower courts have extensively discussed the application of KRE 801A(b)(5), we need not concern ourselves with the Kentucky Rules of Evidence because the facts giving rise to this prosecution arose prior to July 1992, the date of the adoption of the rules. In accordance with KRE 107, the trial court and the Court of Appeals did not need to apply · KRE 801A(b)(5). Therefore, we must look to prior Kentucky law for guidance. In Section 8.20 of the 1984 edition of *The Kentucky Evidence Law Handbook*, Dean Lawson states:

> (A) General Rule: In both criminal and civil litigation, an extrajudicial statement by a participant in a conspiracy may be introduced as an "admission" against all other participants in that conspiracy if the statement was made in furtherance of the conspiracy.
>
> \*  \*  \*  \*  \*  \*
>
> (B) Preliminary Proof Requirement: An extrajudicial statement is not admissible under this rule (i.e., as a statement by a coconspirator) until after the party who offers the evidence introduces prima facie evidence of a conspiracy between the de-

clarant and the party against whom the evidence is offered.

Robert G. Lawson, *The Kentucky Evidence Law Handbook,* § 8.20 (2d Ed.1984).

■ As applied for many years in Kentucky, this part of the common law exception to the hearsay rule was described as follows:

If a conspiracy be shown to exist, then everything said, done, or written by one of them during the existence of the conspiracy and in the execution or furtherance of the common purpose is admissible in evidence against the others even when they are not present.

*Canada v. Commonwealth,* 262 Ky. 177, 178, 89 S.W.2d 880, 881 (1936).

The case of *Ottley v. Herriford,* 161 Ky. 7, 170 S.W. 205 (1914), offers an excellent illustration of a statement made by a party's coconspirator in furtherance of a conspiracy. *Ottley* was an action to set aside an election because of an alteration of ballots. There was proof of a conspiracy to affect the election through such an act. The out-of-court statement offered as evidence was one made to a county clerk requesting that a room containing ballots be left unlocked and unattended for an entry by the conspirators. This Court ruled that it was obvious that this statement was made to further the conspiracy.

■ Before evidence can be introduced under this exception the offering party must introduce proof of a conspiracy. *Davis v. Commonwealth,* 256 Ky. 423, 76 S.W.2d 259 (1934). Most cases describe the necessary proof as a "prima facie showing of the conspiracy." *Ray v. Commonwealth,* 284 S.W.2d 76 (Ky.1955); *Shell v. Commonwealth,* 245 Ky. 223, 53 S.W.2d 524 (1932). Some decisions have required a somewhat greater burden of preliminary proof: "Of course, proof of the existence of the conspiracy must be introduced as a predicate, and it is held the evidence must be clear." *McIntosh v. Commonwealth,* 272 Ky. 159, 161, 113 S.W.2d 1144, 1145 (1938).

In imposing this requirement on the party offering hearsay evidence under this exception, the Court has placed a restriction on the kind of proof that may be used to satisfy it:

[T]he evidence to establish the conspiracy must be found either in things said, done, or written by the one on trial or in parts of the evidence other than that coming directly or indirectly from the alleged co-conspirators of the party on trial.

*Canada v. Commonwealth, supra,* 262 Ky. at 179, 89 S.W.2d at 881.

■ In the instant case, Appellee argues that the Court of Appeals properly held there was insufficient evidence for the trial court to rule he was part of the conspiracy, thereby making Boyd's out-of-court statement inadmissible. We disagree. The trial court was presented with the following evidence: 1) When the police searched Boyd's house, Appellee was the only other male found inside; 2) Appellee was seen fumbling in the garbage can where the marijuana was found; 3) Boyd told Detective Treadway when arranging the buy, that his money man could be at the house within three to eight minutes, indicating that it was necessary for the money man to be present before the buy could be completed; and 4) Appellee pulled into Boyd's driveway immediately prior to the time of the buy. This Court finds that the aforementioned evidence, in addition to Appellee's presence, was sufficient for a finding of his involvement in the conspiracy. Furthermore, given the trial judge's discretion, we find that there was enough independent evidence for the admission of the statement under evidence principles existing at that time. It is a well-settled principle of Kentucky law that a trial court ruling with respect to the admission of evidence will not be reversed absent an abuse of discretion. *Simpson v. Commonwealth,* Ky., 889 S.W.2d 781 (1994). We find no abuse of discretion.

In rendering its opinion, the Court of Appeals failed to give the findings of the trial court appropriate deference. As the Sixth Circuit noted in *United States v. Carter,* 14 F.3d 1150, 1155 (6th Cir.1994), the findings of the trial court on the issues of whether a conspiracy existed, whether the defendant was part of the conspiracy, and whether the co-conspirator's statements were in furtherance of the conspiracy, should not be disturbed unless they are found to be clearly erroneous. In the case at hand, this Court concludes that the trial court's findings were

not clearly erroneous. In finding that there was independent evidence of a conspiracy between Boyd and Appellee, the trial court was in a unique position to decide the credibility of the evidence, its weight, its value, and its sufficiency. The trial court, and not a reviewing appellate court, is in the best position to decide the probability or improbability of the existence of a conspiracy. Likewise, an appellate court, having only a paper record to review, is in no position to find that the trial court acted unreasonably in concluding that it was more probable than not that Appellee was a participant in the conspiracy. A long line of Kentucky cases refuses to disturb on appeal the findings of a trial court supported by substantial evidence, the most recent being *Tolley v. Commonwealth*, Ky., 892 S.W.2d 580, 584 (1995).

In considering the facts and circumstances in evidence, including Appellee's interest in the outcome of the case, Appellee's relationship to Boyd, and the tenor of Appellee's alibi, the fact finder may recall the words of Justice Frankfurter describing a conspiracy as a distinctly dangerous crime. In *Callanan v. United States*, 364 U.S. 587, 593, 81 S.Ct. 321, 325, 5 L.Ed.2d 312 (1961), Justice Frankfurter stated:

> This settled principle derives from the reason of things in dealing with socially reprehensible conduct: collective criminal agreement—partnership in crime—presents a greater potential threat to the public than individual derelicts. Concerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality. *Group association for criminal purposes often, if not normally, makes possible the attainment of ends more complex than those which one criminal could accomplish.* (emphasis ours) Nor is the danger of a conspiratorial group limited to the particular end toward which it has embarked. Combination in crime makes more likely the commission of crimes unrelated to the original purpose for which the group was formed. In sum, the danger which a conspiracy generates is not confined to the substantive offense which is the immediate aim of the enterprise.

For the reasons stated herein the opinion of the Court of Appeals is reversed and the opinion of the trial court is reinstated.

COOPER, GRAVES, JOHNSTONE, LAMBERT and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents in a separate opinion in which STEPHENS, C.J., joins.

STUMBO, Justice, dissenting.

Respectfully, I must dissent. During the oral argument of this case, counsel for the Commonwealth admitted that under the law as it existed in this state prior to the adoption of the Kentucky Rules of Evidence, the statement at issue would not be admissible into evidence. The majority, having held that prior Kentucky law applies (despite the fact that the argument did not arise until the case reached this level of appeal), has both ignored the admission of the Commonwealth and the law it purports to apply. I would hold that there was insufficient, independent evidence of King's alleged participation in a conspiracy to permit the introduction of the statement "that's my money man," without considering the statement itself.

That being said, we should acknowledge that we granted discretionary review in this case to determine whether, following the adoption of KRE 801A(b)(5), the rule of evidence that provided that a co-conspirator's challenged hearsay statement could not be used to prove the existence of a conspiracy and the defendant's participation in it had any continuing vitality. *Canada v. Commonwealth*, Ky., 262 Ky. 177, 89 S.W.2d 880, 881 (1936). I think it should be stressed that this particular question of evidentiary law remains unresolved and that this Court has not addressed whether we will, or should, follow the lead of the United States Supreme Court as set forth in *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

STEPHENS, C.J., joins.