Michael R. ALLEY, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2003–SC–0103–MR.

Supreme Court of Kentucky.

April 21, 2005.

---

7. *Hill v. Commonwealth,* 125 S.W.3d 221, 233 (Ky.2004) (quoting *Tunget v. Commonwealth,* 303 Ky. 834, 198 S.W.2d 785, 786 (1946)).

Randall L. Wheeler, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Tami Allen Stetler, Assistant Attorney General, Michael Harned, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict convicting Alley of murder and fourth-degree assault. He was sentenced to life without the possibility of parole for 25 years.

The questions presented are whether it was error to fail to find that the defendant was incompetent to stand trial; whether it was error to decline to hold a hearing to determine whether the defendant should be forcefully medicated; whether there was sufficient notice of aggravating circumstances; whether the jury was properly instructed as to the aggravating factor of first-degree burglary; whether it was error to allow the prosecutor to tell the jury that he had decided not to seek the death penalty and that the defendant was afforded rights that he denied the murder victim; whether the order of the closing argument in the penalty phase was error; and whether the verdict forms submitted to the jury produced a manifest injustice.

For purposes of this opinion, we will refer to the murder victim as the "first victim" and the victim of assault as the "second victim." Alley was a regular customer at Sue's Handi Mart in Wayne County where both victims worked. At some point, Alley became infatuated with the first victim and sent her notes and gifts. She ultimately took out three warrants against him for harassing and stalking during the summer and fall of 1995. In November 1995, Alley entered the store with a .22 caliber rifle. The second victim was aware of the situation between Alley and the first victim and told Alley to leave the store. Alley said something to the first victim about the stalking and called her a derogatory name. He then brought his gun up from his side and began to shoot. Although apparently aiming at the first victim, he hit the second victim in the hip. After the second victim was shot, Alley walked past her and shot the first victim repeatedly. She suffered gunshot wounds to the head, abdomen and leg. Alley subsequently left the store. During the attempt to arrest Alley, he fired at least three shots at two deputy sheriffs.

Prior to trial, Alley began to exhibit certain mental problems. He has a history of mental problems including hospitalization at least seven times since being injured in an automobile accident in 1980. A preliminary hearing was passed and his arraignment was waived because he was being evaluated for competency. Both the Commonwealth and the defense sought competency evaluations a few months later.

In July 1999, after a competency hearing, Alley was found incompetent to stand trial and was committed to the Kentucky Correctional Psychiatric Center (KCPC) for treatment. He was released later that year and given another competency hearing, but he was again found incompetent for trial. Involuntary commitment proceedings were instituted. About ten

months later, he entered Central State Hospital where he remained approximately three months. After he was released and reindicted in November 2001, a new competency hearing was commenced and the defendant presented evidence from a neuropsychologist about the devastating effect of his brain damage from the 15 year-old-car accident on his ability to participate in his defense. He was, however, found competent. At trial, the defense did not contest that Alley had shot the two women, but claimed insanity. The jury sentenced him to life in prison without parole for 25 years on the murder charge and twelve months and a fine of $500 on the fourth-degree assault charge. This appeal followed.

## I. Competency to Stand Trial

■ Alley argues that the trial judge committed error and denied him due process by failing to find that he was incompetent to stand trial. He alleges that a preponderance of evidence proving him incompetent was established. RCr 8.06 and KRS 504.100 set out the legal duty to order a competency hearing once reasonable grounds are presented which call competency into question. *Thompson v. Commonwealth*, 56 S.W.3d 406 (Ky.2001). The burden is on the defense to prove a defendant incompetent by a preponderance of the evidence. *Gabbard v. Commonwealth*, 887 S.W.2d 547 (Ky.1994).

On June 19, 2002, the trial judge conducted a day-long evidentiary hearing to consider the issue of competency to stand trial. The record indicates there is substantial evidence to support the finding of the trial judge as to competency. Both counsel filed memorandums regarding the issue. The mere fact that the trial judge accepted the testimony of one of the doctors as more credible than the other, has been found to be permissible and allows the judge to make a finding regarding competency. *See Harston v. Commonwealth*, 638 S.W.2d 700 (Ky.1982).

■ In Kentucky, the standard of competency is whether the defendant has a substantial capacity to comprehend the nature and consequences of the proceedings against him and to participate rationally in his defense. *Commonwealth v. Strickland*, 375 S.W.2d 701 (Ky.1964). This is similar to the test set out in KRS 504.060(4). The trial judge had the authority to accept the medical evidence that he believed was most credible and convincing. He made extensive findings of fact with regard to the evidence and determined that Alley had failed to provide sufficient evidence to demonstrate that he was incompetent to stand trial in light of the evidence to the contrary. Our review of the record indicates that the decision of the trial judge was supported by substantial evidence and was not clearly erroneous. *See Fugate v. Commonwealth*, 62 S.W.3d 15 (Ky.2001).

## II. Medication Hearing

■ Alley claims that the trial judge erred and denied him due process of law by declining jurisdiction and, thereby, failing to hold a hearing to determine whether he should be forcibly medicated at his trial. The medication in question was prescribed pursuant to a diagnosis and treatment plan of doctors evaluating and treating Alley. It had been prescribed by the medical staff because of his need for medication, which in fact assisted him in becoming and remaining competent and able to function on a daily basis. This included the ability of the defendant to participate and assist counsel in the presentation of his defense.

Defense counsel filed a motion asking the trial judge to order that Alley's psychiatric medication be stopped prior to trial and not resumed until after trial. The basis of the motion was that Alley was not

on medication at the time of the offense and the jury should be entitled to see and hear his true physical and mental state on that day. It was argued that to have the defendant continue to take the medication which masks his true mental state would deny his right to the insanity defense.

At a hearing on the motion, the prosecutor objected on the grounds that the trial judge had no authority to intervene with the defendant's medication and that doing so could lead to security risks in the courtroom. Further, he stated that the issue was whether the defendant was insane at the time of the offense, not his state of mind at trial.

The trial judge noted that the defendant was not under any court order for medication and that nobody was ordering Alley to take it. Considering what was presently before him, the trial judge stated that he could not direct Alley either to take or not to take his medications. He observed that he may be able to do that if the proper motion was before him, but it wasn't at this time. Responding to the ruling by the trial judge, defense counsel stated "that's fine." He later indicated that if that was the case—that it was not required of Alley to take his medication— that was fine. "We understand that."

It is clear from our review of the record that the trial judge never declined jurisdiction, but correctly determined that the proper motion was not before him. Defense counsel recognized that and clearly acquiesced in the decision. Consequently, this issue has been waived. This issue is also completely without merit. If a defendant claimed he was not culpable for a crime because he was intoxicated, should he be permitted to get drunk during trial in order to demonstrate his state at the time of the offense? Clearly not and it is equally preposterous to ask the court to order Alley to stop his medication so that he could exhibit his mental instability. As correctly noted by the Commonwealth, the issue in the case was whether the defendant was insane at the time of the offense, not his state of mind at trial.

Alley cites numerous legal authorities in support of his argument, but all of those cases are distinguishable from the situation here. They do not stand for the proposition that the trial judge is required to consider the question of medication. The elements discussed by Alley arise only when a trial judge exercises authority to address the issue of medication, which is not the case here. *Turner v. Commonwealth*, 860 S.W.2d 772 (Ky.1993), does provide that a trial judge has authority to order involuntary medication prior to and during trial. However, that case does not go so far as to require the trial judge to exercise such authority. In this case, the evidence indicated that the medication program produced stabilization of the mental problems and allowed him to remain competent and able to participate in his own defense. It clearly supports the decision by the trial judge not to interfere in the medical decision to place him on the medication.

*Sell v. United States*, 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003), holds that the government may involuntarily administer antipsychotic drugs to a mentally ill defendant facing criminal charges in order to render the defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial and, taking account of the less intrusive alternatives, is necessary significantly to further important governmental trial-related interests. *Sell, supra,* goes on to state that assuming the defendant was not a danger to himself or to others, he could not be ordered involuntarily to take antipsychotic drugs solely to render him competent to stand trial

without consideration of other important questions. This decision mirrors similar opinions rendered in *Riggins v. Nevada,* 504 U.S. 127, 112 S.Ct. 1810, 118 L.Ed.2d 479 (1992) and *Washington v. Harper,* 494 U.S. 210, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990). All of the federal cases are premised on the idea that the medication is required or ordered by the trial judge. That is not the situation here because the medication has been ordered by independent medical officials.

Alley was not entitled to a hearing on this issue. The trial judge did not err in denying relief on the grounds that the motion was not properly before him.

### III. Aggravating Circumstance

■ Alley alleges that the federal due process clause was violated because the aggravating circumstance relied on by the prosecution was not set forth in the indictment. The record indicates that Alley had sufficient notice of the aggravating circumstance used to enhance his sentence eligibility. The defect claimed is the failure of the grand jury to consider, find and state an essential element of the offense, the aggravating circumstance of murder while engaged in the commission of first-degree burglary. KRS 532.025(2)(a)(2). We find this argument to be without merit. It has been recognized that the aggravating circumstances even for the death penalty do not have to be charged in the indictment. *Cf. Furnish v. Commonwealth,* 95 S.W.3d 34 (Ky.2003). Similarly, there is no error here.

### IV. Directed Verdict—Burglary Aggravator

■ Alley complains that he was entitled to a directed verdict on the uncharged crime of burglary which was used as an aggravating factor because he asserts that there was insufficient evidence of that offense. KRS 511.020 defines burglary in its relevant part as follows:

A person is guilty of burglary in the first degree when, with the intent to commit a crime, he knowingly enters or remains unlawfully in a building, and when in effecting entry or while in the building or in the immediate flight therefrom, he or another participant in the crime:

(a) Is armed with explosives or a deadly weapon; or

(b) Causes physical injury to any person who is not a participant in the crime; or

(c) Uses or threatens the use of a dangerous instrument against any person who is not a participant in the crime.

■ Here, Alley entered the store with a .22 caliber rifle and the intent to shoot the first victim. Evidence of criminal intent is the key to the proper application of the burglary statutes. *Commonwealth v. Partee,* 122 S.W.3d 572 (Ky.2003). The second victim, who was the manager of the store and knew of the stalking and harassing warrants filed by the first victim, ordered Alley to leave the store. *Bowling v. Commonwealth,* 942 S.W.2d 293 (Ky.1997) recognized that the defendant in that case had the privilege to enter the store, but that his permission to be on the premises expired when he committed the criminal acts charged. In this instance, Alley did not take anything from the store and left immediately after the shootings, but he did wound the second victim. *Cf. Tribbett v. Commonwealth,* 561 S.W.2d 662 (Ky.1978); *Fugate v. Commonwealth,* 993 S.W.2d 931 (Ky.1999). Under these circumstances, the finding of an aggravator was proper. A directed verdict was not appropriate in this case. *Commonwealth v. Sawhill,* 660 S.W.2d 3 (Ky.1983).

### V. Penalty Phase Closing Argument

■ Alley alleges that it was error for the trial judge to permit the prosecutor in his penalty phase closing argument to tell the jury that he had decided not to seek

the death penalty and that Alley had been afforded rights that Alley had denied to the fatal victim. He claims that the remarks were prejudicial and inflammatory and denied him a fair and accurate determination of his penalty as well as due process of law.

Essentially the prosecutor stated that life without the possibility of parole for 25 years would be a correct verdict and that he had voluntarily removed the death penalty from the equation. The prosecutor also stated that Alley had been given a lot of constitutional rights in this trial but the victim had not been extended similar rights. Objections by the defense to both comments were overruled. Given the totality of the circumstances, Alley has not demonstrated that these comments were prejudicial or sufficient to affect the outcome of the trial or the penalty.

### VI. Right to Open and Close

■ Alley argues that it was error for the trial judge not to allow him to make his penalty phase closing argument after the prosecutor. He states that KRS 532.025(1), which involves all cases where the death penalty "may" be imposed, directs a number of procedures to be followed. Subsection (a) states that "(T)he prosecuting attorney shall open and the defendant shall conclude the argument." Defense counsel requested this procedure to be followed, but the trial judge declined because the prosecutor had decided not to seek the death penalty. Consequently, the prosecutor was allowed to make the final closing argument.

Here, the prosecution was not seeking the death penalty. There were no instructions or other indications to the jury that it could possibly impose a capital sentence. This was not a case where the death penalty was an option for the jury. Consequently, emphasis on the word "may" is unconvincing. Alley was not facing any possible death sentence, and thus he could not claim the benefit of being able to present a closing argument after the prosecution as if he were facing such a penalty. There was no error on the part of the trial judge.

### VII. Penalty Phase Verdict Form

■ Alley contends that he was denied due process and a fair and rational sentencing because the verdict form allegedly directed the jury to fix his sentence at life without parole for 25 years if it found the aggravating circumstance. He argues that the form made it impossible for the jury to find the aggravating circumstance without fixing the aggravated penalty for life without parole. He maintains that this was palpable error and resulted in a manifest injustice pursuant to RCr 10.26.

Upon review, we find no palpable error or manifest injustice as required by the rule. Instruction No. 3 directs the jury that if it finds the aggravating circumstance beyond a reasonable doubt, that it shall be considered **in fixing a sentence**. It does not mandate what sentence. Accordingly, even though the instructions might have been drafted more concisely, it is evident that the jury had sufficient information so as to decide the appropriate and available penalties. *See Hodge v. Commonwealth*, 17 S.W.3d 824 (Ky.2000), *cert. denied*, 531 U.S. 1018, 121 S.Ct. 581, 148 L.Ed.2d 498 (2000). Any possible error did not affect the fundamental fairness and basic integrity of the proceedings.

Alley received a fair trial. He was not denied any of his due process rights under either the state or federal constitutions.

The judgment of conviction is affirmed.

COOPER, GRAVES, JOHNSTONE and KELLER, JJ., concur.

SCOTT, J., concurs in part and dissents in part by separate opinion and is joined by LAMBERT, C.J.

Justice SCOTT, concurring in part and dissenting in part.

I must disagree with the majority with respect to the medication issue. I concur on all other issues.

Michael Alley was found incompetent to stand trial on two separate occasions subsequent to court ordered evaluation at Kentucky Correctional Psychiatric Center (KCPC). Therefore, Alley's indictment was dismissed and he was involuntarily hospitalized in Central State Hospital for treatment. After three months of treatment with medication, he was released from Central State—found to be competent to stand trial—and re-indicted. At trial, seven separate doctors testified to his diagnoses of impulse disorder, paranoia, psychotic disorder, drug induced psychosis, organic mental disorder related to the brain injury, delusions, dementia, hallucinations, etc; most of which evolved from a car accident more than 15 years previous from which he suffered brain damage and had lain in a coma for 11 days. His defense at trial was insanity. Obviously, it would have been beneficial for the jury to have insight—aside from the medical testimony—into Alley's mental and physical state during the offenses.

Prior to trial, Alley moved the court to allow him to be taken off of his antipsychotic drugs so that the jury could see him in the same mental and physical state as on the day of the offenses. The trial court denied the motion; ruling it did not have jurisdiction to address Alley's request that he be taken off his medication, even though Alley had been involuntarily committed to Central State by order of the court, which led to his successful treatment with Risperdal.

In *Tolley v. Commonwealth,* 892 S.W.2d 580 (Ky.1995), we held the circuit courts had jurisdiction over matters such as this. See also, *Sell v. United States,* 539 U.S. 166, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003). Specifically, the circuit court had jurisdiction to involuntarily commit Alley to Central State and approve the use of Risperdal—thus the circuit court also had jurisdiction to order him taken off the medication. We should heed the comments of Section 11 of our Constitution's Bill of Rights, which says: "In all criminal prosecutions the accused has **the right to be heard by Himself** and counsel, . . ., and to have compulsory process for obtaining witnesses in his favor."

The solution would simply be to un-medicate Alley and allow him to revert back to his un-medicated condition for a short period of time; then allow a video deposition to be taken of him by his counsel and the Commonwealth, then re-medicate him prior to trial. This would assure he would be in a competent state during trial; while allowing the jury to see the real, un-medicated Alley.

The Court, of course, should conduct a hearing to determine whether taking him off the medication would endanger (1) his health, or (2) his probability of requiring competency for trial and (3) to assure itself that Alley understands any risks of coming off the medication for this period of time and voluntarily and knowingly agrees thereto . . .

Thus, I respectfully dissent.

LAMBERT, C.J., joins this opinion.