# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: SEPTEMBER 18, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000180-TG

JAMES GILLIAM                                  APPELLANT

V.                 ON APPEAL FROM LAUREL CIRCUIT COURT
                   HONORABLE GREGORY ALLEN LAY, JUDGE
                   NO. 05-CR-000205

COMMONWEALTH OF KENTUCKY                  APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

### I. Introduction

James Gilliam was convicted by a jury in the Laurel Circuit Court of first-degree assault;[1] first-degree possession of a controlled substance (first offense, methamphetamine);[2] and of being a second-degree persistent felony offender.[3] Based on the persistent felony offender conviction, the jury recommended an enhanced sentence of life in prison for assault, and an enhanced sentence of ten years in prison for possession. The trial court sentenced Gilliam in accordance with the jury's recommendation, ordering both sentences to run concurrently. On appeal, he argues the trial court erred by: (1) finding him competent to stand trial; (2) admitting hearsay testimony; and (3) failing to instruct the jury on second-degree assault. Finding no error, we affirm.

---

[1] Kentucky Revised Statute (KRS) 508.010.
[2] KRS 218A.1415.
[3] KRS 532.080.

## II. Factual Background

James Gilliam was living with his 80 year-old mother, Janie Gilliam, in her mobile home in London in August of 2005. Janie suffered from mild to moderate dementia. James's brother, Harold Gilliam, and his sister, Carolyn Bennett, lived on adjacent properties.

On August 12, 2005, Carolyn took Janie to Marymount Medical Center because she was complaining of rib pain following a fall. Janie was later released from the hospital with bruised ribs and Carolyn took her home. When Carolyn asked James about the fall, he claimed he did not know his mother had fallen. Carolyn left her mother's home between 1:00 and 2:00 a.m. on August 13th.

At about 9:15 a.m. on that same morning, Carolyn and her son walked to Janie's mobile home to check on her. Inside the home, Carolyn discovered the place in shambles, with broken glass and overturned furniture. James, who was sitting on the couch, began cursing at Carolyn. He shouted, "If you don't get off my property, I'll call the authorities. I'll kill you. Where's my knife?" Carolyn and her son, who were afraid, fled the scene and returned home. As her son was calling the police, Carolyn went to the home of her other brother, Harold, so that he could help her look for their mother. She found Janie sitting in a chair on Harold's front porch, wearing her nightgown and covered in blood. Carolyn immediately asked, "Mother, what's wrong with you?" Janie replied, "James beat me up, threw me out of the trailer, and tried to kill me." Carolyn and her daughter-in-law, Donna, took Janie to her home and waited for emergency personnel to arrive. Janie was cold, hungry, and thirsty. Donna took pictures of Janie's wounds.

Emergency medical technician (EMT), Josh Whitaker, was dispatched to Carolyn's home and cared for Janie. When the EMT arrived, he found Janie sitting in a chair wearing her blood-soaked nightgown. She had numerous lacerations and contusions on her body, but was oriented to time, place, and person. The EMT further testified that Janie told him "her oldest son had beat her up." A subsequent examination of Janie in the emergency room revealed that her injuries were severe. She had a fracture in her spine which could have resulted in death or paralysis had it gone untreated.

Deputy Sheriff William Jones responded to the scene and went to Janie's mobile home. He found James yelling, cursing, and breaking things. In order to subdue James, officers were forced to use pepper spray and batons. In a search pursuant to his arrest, officers found a powder substance on the coffee table containing methamphetamine.

A competency issue was raised prior to trial because of James's extensive history with the Kentucky Correctional Psychiatric Complex (KCPC). After a competency examination and hearing, the trial court determined James was competent to stand trial. His trial was held on November 6, 2006. Due to Alzheimer's disease and her worsening dementia, Janie was not available to testify. Further, James did not testify, nor did he call any witnesses. At the conclusion of the trial, James requested a jury instruction on second-degree assault, but his request was denied. James was convicted on all counts and was sentenced according to the jury's recommendation.

### III. Analysis

### A. Competency

3

James's first argument is that the trial court erred in finding him competent to stand trial, thereby denying him due process.[4] Specifically, he claims the trial court should have, at a minimum, ordered him to KCPC for a more comprehensive in-patient evaluation before ruling on competency. We disagree. We find that the trial court adhered to the law in conducting the competency hearing and that there was substantial evidence to support the finding.

A competency hearing was held on January 30, 2006. Dr. Vincent Dummer, a psychologist with KCPC who examined James on October 14, 2005, testified at the hearing. James did not present any witnesses at the hearing. Dr. Dummer, who conducted a two hour examination of James at the Laurel County Detention Center, noted that James was in a "pretty good state." He also characterized James as "oriented" and "in touch with reality." He further testified that James had a short attention span and mild signs of thought disorder. Dr. Dummer also testified that, generally speaking, competency can fluctuate. Moreover, Dr. Dummer testified that James could carry on a conversation, understand his role and the role of others in legal proceedings, and perform tasks. It was his belief, he told the court, that James had learned how to exaggerate his symptoms to his advantage. Dr. Dummer concluded that James was competent to stand trial and that he was criminally responsible for his actions.

Due process requires that the trial court hold a competency hearing when there is "sufficient doubt" of a criminal defendant's competency. Gilbert v. Commonwealth, 575 S.W.2d 455, 456 (Ky. 1978) (citations omitted). At such a hearing, the defendant has the burden of proving he or she is incompetent by a preponderance of the

---

[4] U.S. Const. amend. XIV; Ky. Const. § 2, § 11.

4

evidence. See Gabbard v. Commonwealth, 887 S.W.2d 547, 551 (Ky. 1994) (citation omitted). A question of competency triggers the application of KRS 504.100 which states:

> (1) If upon arraignment, or during any stage of the proceedings, the court has reasonable grounds to believe the defendant is incompetent to stand trial, the court shall appoint at least one (1) psychologist or psychiatrist to examine, treat and report on the defendant's mental condition.
> (2) The report of the psychologist or psychiatrist shall state whether or not he finds the defendant incompetent to stand trial. If he finds the defendant is incompetent, the report shall state:
> (a) Whether there is a substantial probability of his attaining competency in the foreseeable future; and
> (b) What type treatment and what type treatment facility the examiner recommends.
> (3) After the filing of a report (or reports), the court shall hold a hearing to determine whether or not the defendant is competent to stand trial.

See also Kentucky Rule of Criminal Procedure (RCr) 8.06. Moreover, KRS 504.110(3) states, "If the court finds the defendant competent to stand trial, the court shall continue the proceedings against the defendant."

In determining competency, "the test is whether he has substantial capacity to comprehend the nature and consequences of the proceeding pending against him and to participate rationally in his defense." Commonwealth v. Strickland, 375 S.W.2d 701, 703 (Ky. 1964). The trial judge has the authority to determine the weight and credibility of the evidence, and his ruling will not be overturned so long as it is supported by substantial evidence and is not clearly erroneous. See Alley v. Commonwealth, 160 S.W.3d 736, 739 (Ky. 2005).

A review of the record demonstrates that the trial court followed the procedure set forth above. As soon as the issue of competency arose, the court ordered an examination. Dr. Dummer examined James, made a report, and gave his opinion at the competency hearing. His expert opinion was that James was competent to stand trial

5

and that a two hour examination was sufficient to allow him to draw this conclusion. James presented no evidence challenging Dr. Dummer's opinion or the method Dr. Dummer used to evaluate him. Based on the evidence provided by Dr. Dummer, the trial judge found James had the capacity to understand the court proceedings and assist in his defense. There was substantial evidence to support that decision. Further, the trial court provided the process due under Kentucky law. As James has failed to prove the trial court's ruling was clearly erroneous, or that he was denied due process of law, we can find no error.

## B. Hearsay

James also argues that the trial court erred in admitting hearsay statements. Specifically, he argues that he was denied due process when Carolyn and the EMT were allowed to testify that Janie told them James had beaten her. In the alternative, he argues the diminished mental state of Janie, the declarant, makes the statements inadmissible.

At the hearing on James's motion to exclude the testimony, the judge ruled Carolyn's testimony that Janie said, "James beat me up, threw me out of the trailer, and tried to kill me," was admissible as an excited utterance. See Kentucky Rule of Evidence (KRE) 803(2). He also ruled the EMT's testimony that Janie told him "her oldest son had beat her up" was admissible as a statement for the purpose of medical treatment or diagnosis. See KRE 803(4).

### 1. Carolyn's Testimony

In Crawford v. Washington, 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the admission of a testimonial statement violates the Confrontation Clause of the Sixth Amendment, unless the

6

declarant is unavailable to testify and the defendant had an opportunity to cross-examine the declarant. The Court further held, "[w]here nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . ." Id. Thus, the threshold issue is whether the statement Janie made to Carolyn was testimonial.

The Supreme Court has not given us "a comprehensive definition of 'testimonial,'" but it has provided some indication as to what classifies as testimonial hearsay. Id. In Crawford, the Court stated, "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. The Court held in Davis v. Washington,

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. 813, 822, 126 S.Ct. 2266, 2273-74, 165 L.Ed.2d 224 (2006).

We find the statements Janie made to Carolyn to be nontestimonial hearsay. When Carolyn found her severely beaten mother sitting on Harold's porch in pain and wearing a nightgown covered in blood, there was an ongoing emergency. Therefore, we find the trial court did not violate James's rights under the Confrontation Clause by admitting this testimony.

Our inquiry does not end there, however. We must now determine if the trial court properly admitted this testimony under the excited utterance exception to the hearsay rule. Clearly this testimony is hearsay because it is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to

7

prove the truth of the matter asserted." KRE 801. Under KRE 802 hearsay is not admissible except as provided for under the rules. KRE 803(2) provides for an excited utterance as an exception to the hearsay rule. The rule defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." KRE 803(2).

This Court, in Jarvis v. Commonwealth, set forth factors for determining whether a statement is an excited utterance:

> (i) lapse of time between the main act and the declaration, (ii) the opportunity or likelihood of fabrication, (iii) the inducement to fabrication, (iv) the actual excitement of the declarant, (v) the place of the declaration, (vi) the presence there of visible results of the act or occurrence to which the utterance relates, (vii) whether the utterance was made in response to a question, and (viii) whether the declaration was against interest or self-serving.

960 S.W.2d 466, 470 (Ky. 1998) (citation omitted). These factors serve only as guidelines for the trial court in determining admissibility. Id. After applying the above mentioned factors to the facts of the case before us, we cannot find that the trial court abused its discretion in finding this statement to be an excited utterance. Evidence at trial showed Janie was found in close proximity to the place where the incident took place and that she was scared and visibly shaken by the incident. She was discovered in her nightgown on adjacent property and she was covered in blood – some of which was fresh. As these factors support the trial court's finding of an excited utterance, we reject James's argument with regard to the admissibility of Carolyn's testimony.[5]

## 2. The EMT's Testimony

Turning to the admissibility of Janie's statement to the EMT, we find there was no ongoing emergency when Janie made the statement. Therefore, the statement was

---

[5] James argues that B.B. v. Commonwealth, 226 S.W.3d 47 (Ky. 2007), controls the case before us. The EMT testified that Janie was oriented to time, place, and person; James did not present any evidence to the contrary. Therefore, his argument is without merit.

testimonial hearsay. Furthermore, we find the statement Janie made to the EMT to be akin to the statement at issue in Rankins v. Commonwealth, 237 S.W.3d 128 (Ky. 2007). In Rankins, "[T]he police officer responded to a call, and discovered [the victim]. She proceeded to tell the officer 'what happened,' recounting the assault by Rankin." Id. at 131-32. Like the victim in Rankin, Janie was telling the EMT "what happened." Thus, her statement was testimonial.

Even were we to accept the argument that the statement is nontestimonial, as it was made to an EMT and not in response to an interrogation by a police officer during an investigation, we find it does not fall within any hearsay exception. Contrary to the trial court's conclusion, we do not find the statement qualifies as a statement for purposes of medical treatment or diagnosis under KRE 803(4). The Commonwealth has failed to show how the identity of Janie's attacker was necessary for the treatment of the injuries she received. See Garrett v. Commonwealth, 48 S.W.3d 6, 12 (Ky. 2001) ("statements of identity are 'seldom if ever' pertinent to diagnosis or treatment"). Nor do we accept the Commonwealth's arguments that the statement fell within KRE 803(2) (excited utterance); KRE 803(1) (present sense impression); or KRE 804(b)(2) (belief of impending death). Janie was not describing the situation as it occurred, nor is there any indication she had a belief in impending death. Further, the Commonwealth's argument that her statement was an excited utterance simply does not fit within the facts at the time she received treatment. Thus, we find Janie's statement to the EMT did not fall within any hearsay exception and was inadmissible.

Even though we find that it was error for the trial court to admit this statement, such error was harmless. See Heard v. Commonwealth, 217 S.W.3d 240 (Ky. 2007) (harmless error analysis applies to Crawford). There was substantial evidence

9

presented at trial that James was guilty. The evidence showed Janie was left alone at her home with James between 1:00 and 2:00 a.m. At 9:15 a.m., Carolyn found James alone in Janie's home. James was angry and using profanity. In addition, there was broken glass and overturned furniture in the home. Carolyn's testimony regarding the state of Janie's home and James's disposition were corroborated by testimony from Deputy Jones. Moreover, pictures shown at trial and witness testimony showed the severity of Janie's injuries. Even without the admission of the statement Janie made to the EMT, there was substantial evidence to convict James. Under these circumstances, we find it was harmless error for the trial court to admit the hearsay statement made to the EMT.

## C. Second-Degree Assault Instruction

Finally, James argues he was substantially prejudiced when the trial court failed to instruct the jury on second-degree assault. Because there was no evidence presented at trial to support a second-degree assault instruction, his argument is without merit.

"A person is guilty of assault in the first degree when: (a) He intentionally causes serious physical injury to another person by means of a deadly weapon or a dangerous instrument[.]" KRS 508.010(1). "A person is guilty of assault in the second degree when: (a) He intentionally causes serious physical injury to another person[.]" KRS 508.020(1). Both parties concede that Janie had serious physical injuries. James does not deny intentionally causing these physical injuries. James concedes it is possible that Janie's injuries were caused by a dangerous instrument, specifically, by his hands or fists. However, James asserts that it is equally possible that the injuries were caused

10

by something other than his hands or fists. Mainly, he argues it is entirely possible that Janie's injuries were the result of a fall or struggle to escape from him.

In Kentucky, "[a]n instruction on a lesser included offense is appropriate if, and only if, on the given evidence a reasonable juror could entertain a reasonable doubt as to the defendant's guilt of the greater offense, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense." Taylor v. Commonwealth, 995 S.W.2d 355, 362 (Ky. 1999) (citations omitted). Although there was evidence that James intentionally caused serious physical injury to Janie using a dangerous instrument, there was no evidence that James could have done so without using a dangerous instrument. Specifically, there was no evidence that Janie injured herself in an effort to escape James's attack. Therefore, a reasonable juror could not have doubted James was guilty of first-degree assault based on the evidence given while believing beyond a reasonable doubt that James was guilty of second-degree assault.

James's reliance on Reed v. Commonwealth, 738 S.W.2d 818 (Ky. 1987), to support his argument is misplaced. In Reed, this Court stated, "Our law requires the court to give instructions 'applicable to every state of case covered by the indictment and deducible from or supported to any extent by the testimony.'" Id. at 822 (citation omitted). Contrary to the circumstances in Reed, James cannot point to evidence presented at trial that would indicate Janie suffered serious physical injury attempting to escape from him. To the contrary, the evidence was that James beat his mother. Therefore, we find that James was not entitled to an instruction on second-degree assault.

11

# IV. Conclusion

For the foregoing reasons we affirm the conviction and sentence of the Laurel Circuit Court.

All concur, except Venters, J., not sitting.

COUNSEL FOR APPELLANT:

Shelly R. Fears
Assistant Public Advocate
Department of Public Advocacy
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601-1133

COUNSEL FOR APPELLEE:

Jack Conway
Attorney General

Heather M. Fryman
Assistant Attorney General
Office of Criminal Appeals
Office of the Attorney General
1024 Capital Center Drive
Frankfort, KY 40601